BELLE CITY MALLEABLE IRON COMPANY and another, Appellants, vs. ROWLAND, Guardian, and another, Respondents.

*November 4—December 2, 1919.*

*Workmen's compensation: "Performing service growing out of and incidental to his employment:" Instructions to servant to prevent destruction of property by fire unnecessary: Evidence as to employee and wife living together: Presumption of dependency.*

1. Where a millwright in charge of the pattern department of an iron company, who had remained in the plant checking patterns after other employees had ceased work, observed a fire as he was leaving and entered a burning building where he lost his life, there is a reasonable inference that he entered the building either to look after valuable patterns or to save his employer's property; and, neither act requiring specific instructions from a superior, the conclusion of the industrial commission that at the time of his death he was performing service growing out of and incidental to his employment, within the meaning of sub. (2), sec. 2394—3, Stats., is sustained.

2. In a proceeding to recover for the death of such employee, the evidence is *held* to show that his widow, whose mind had been impaired for years and who had spent much time in various hospitals but was living temporarily with a son in another city when her husband was killed, was living with her husband at the time of his death within the meaning of sub. 3 (a), sec. 2394—10, Stats.

3. A proper finding that decedent's widow was living with her husband at the time of his death establishes a conclusive presumption that she was solely and wholly dependent upon him for support, in view of sub. 3 (a), sec. 2394—10, notwithstanding she had property and an income of her own sufficient for her support.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

An award was made by the *Industrial Commission of Wisconsin* to the defendant *John D. Rowland* as guardian of Marie J. Hansen, an incompetent person, of the sum of $2,907.24 as compensation by reason of the death of Louis Hansen, husband of said Marie J. Hansen, against the plaintiff *Belle City Malleable Iron Company* as employer and the *Wisconsin Mutual Liability Company* as insurer.

The deceased for a long period of years had been employed by the plaintiff employer as millwright and foreman of the pattern department. He had charge and supervision of the patterns used by the employer in its work. His duties required him to be at the plant of the plaintiff employer not only during the customary working hours but at other times. On Saturday, January 5, 1918, the plant shut down as usual, so far as the rest of the employees were concerned, at noon, but Hansen was in the premises during all of the afternoon engaged in checking over the patterns and working with an inspector from out of town. This work ceased at 5 o'clock and the deceased then started for home. Just as he was leaving the plant and at about five minutes past 5 it was discovered that fire had broken out in the basement of one of the buildings of plaintiff. Deceased immediately turned back, requested another employee to get a pail of water to assist him in putting out the fire, and was last seen just outside one of the buildings. His body was discovered on the following Wednesday morning in the basement of one of the destroyed buildings, some seventy-five feet away from the part of the plant in which the pattern department was located.

Deceased and applicant were married in January, 1900. In 1913 she had a serious operation, and her physical and mental health was substantially impaired from that time. She suffered from delusions and at times was very violent. In the fall of 1913 she went to a sanitarium at Oconomowoc, Wisconsin, returned to Racine about February, 1914, and lived with deceased until the following November, when, after making a trip to California, she returned to the sanitarium, remaining there until May, 1915. In January, 1915, on application of her husband, a guardian was appointed for her property. In July, 1915, she returned to the sanitarium, remaining there until September. From that date until November, 1916, she lived with her husband. She then went as a voluntary patient to the state hospital at Mendota, from there to Waukegan, Illinois, and in January, 1917, again to the sanitarium at Oconomowoc, remaining there until May. In the summer or fall of 1917 she went to Chicago and kept house for her adult son by a former marriage in a three-room flat furnished by him. She did not live in the same house with her husband at any time after September, 1916. She had consulted an attorney concerning the bringing of a divorce action in 1914 or 1915, but none was started.

At the time of her marriage in 1900 she had some property of her own. The earnings of her husband from that time on were kept subject to the control and disposition of the two jointly. The homestead, a good-sized house of eight to ten rooms in Racine, was in her name and worth from $4,000 to $5,000. She had invested in interest-bearing securities about $15,000. The income from such investments, together with small amounts of the principal at times, were used for her care, and the deceased advanced but slight amounts during the last two years of his life for her support, but appears to have paid for the expenses of her trip to California. No call appears to have been made upon him by her or her guardian for funds during this period, at least none to which he failed to respond.

In her own testimony before the *Commission* she said in substance, among other things: "We were very happy together. He was a good man; he always used to provide for me. I agreed with him to live in Chicago with my son until I got well. My staying in Chicago was a sort of visit with my son." Shortly before the death she told her son of her intention of going back to her husband. From the testimony of the son as well as others, it appears that at times she expressed herself as not wanting to live with her husband and at other times as desirous of doing so.

The *Commission* found that applicant was living with Louis Hansen at the time of his death within the meaning of sub. 3 (a), sec. 2394—10, Stats., and therefore entitled to a death benefit.

The plaintiff employer and insurer brought this action in the circuit court for Dane county to review the determination of the *Commission* in such award, and from the judgment of the circuit court affirming such award this appeal is taken.

For the appellants there was a brief by *Roehr & Steinmetz,* attorneys, and *Julius E. Roehr,* of counsel, and oral argument by *Ida E. Luick,* all of Milwaukee.

For the respondent *Industrial Commission* there was a brief·by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, and oral argument by *Mr. Gilman.*

Eschweiler, J. The appellants contend on this appeal, first, that Hansen was not within the course of his employment in entering the burning building where he met his death; second, that the applicant, Marie J. Hansen, was not living with her husband at the time of his death within the provisions of sub. 3 (a), sec. 2394—10, Stats.; and lastly, that she was not a dependent upon him within the meaning of the same statute.

We are satisfied that the evidence supports the conclusion of the *Commission* that at the time of his death Louis Han-

sen was performing service growing out of and incidental
to his employment within the meaning of sub. (2), sec.
2394—3, Stats.   He must have entered the building volun-
tarily and knowing the possibility of danger in so doing
from its being then on fire.   But it is a reasonable inference
that he did so for either one or both of these purposes:
(1) under the specific duty devolving upon him to have
charge of and look after the valuable patterns essential for
the work being done by his employer; (2) from the sense of
obligation to use a reasonable amount of care to save his
employer's property at a time of such emergency.   As to
each of these it needed no specific instructions from any su-
perior to perform such services or voluntarily assume such
responsibility while making an effort within the field of
reasonable care to save the property of his employer.   While
so doing he cannot be considered, as a matter of law, to be
a stranger.   *McPhee's Case,* 222 Mass. 1, 4, 109 N. E. 633;
*Munn v. Industrial Board,* 274 Ill. 70, 113 N. E. 110.

We do not think that either the letter or the spirit of the
workmen's compensation act requires that such employee
should be penalized for obeying such a natural and com-
mendable instinct on his part.

On the third point urged by appellants, we hold that un-
der the testimony of Mrs. Hansen to the effect that she was
living with her son only temporarily rather than with her
husband and by reason of an agreement between the de-
ceased and herself on account of her ill health, and that the
work required in the apartment furnished by the son was
much less of a strain upon her than at the homestead, and
that she expected to return to her husband, all furnish ample
warrant for the finding that she was living with her husband
at the time of his death.   *Northwestern Iron Co. v. Indus-
trial Comm.* 154 Wis. 97, 101, 142 N. W. 271.

Having properly held that she was living with her hus-
band at the time of his death, then sub. 3 (a), sec. 2394—10,
Stats., establishes a conclusive presumption that she was

Neil & Co. v. Wisconsin Tel. Co. 170 Wis. 298.

solely and wholly dependent upon him for support. That she had property of her own, even were the income therefrom sufficient and for a time actually had been alone used for her support, would be entirely immaterial.

*By the Court.*—Judgment affirmed.