WISCONSIN CARBONIC GAS COMPANY, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*September 12—October 8, 1935.*

For the appellant there was a brief by *Rubin & Zabel,* attorneys, and *R. R. Stauff* of counsel, all of Milwaukee, and oral argument by *Mr. Stauff.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

MARTIN, J. On and prior to July 13, 1933, defendant Hammond was employed by the plaintiff as a truck driver. Between 5 and 5:30 p. m. on said date he was directed to

make delivery of an order of dry ice to the Soldier Boy Ice Cream Company located about three and a half miles from plaintiff's place of business. After making this delivery he proceeded to his home with the plaintiff's truck, intending to keep the truck at his home overnight, and to drive it back the following morning to his employer's place of business. He arrived home at about 6:15 p. m., and parked the truck on the street in front of his residence.

After he had dinner he drove the truck into his driveway, where he parked it for the night. Shortly after so parking the truck, and while he was doing some work on his own auto, which was parked within a few feet in front of the truck, a neighbor called his attention to the truck being on fire. Immediately Mr. Hammond reached for a garden hose, and as he was stooping over to turn on the water, in close proximity to the truck, his clothes caught fire and he was severely burned.

Thereafter Hammond made application to the Industrial Commission for adjustment of his claim. At the hearing the applicant claimed that he had been given permission to keep the truck at his home overnight. The employer denied that such permission had been given. On December 13, 1933, the chief examiner for the Industrial Commission who heard the case made findings of fact and entered an interlocutory award. Among others, the following finding was made:

"(1) That applicant, on July 13, 1933, while performing service growing out of and incidental to his employment, sustained personal injury from burns incidental to an effort on his part to help to put out a fire in a truck of the respondent; that said truck was at the home of the applicant and was brought there by the applicant, with the permission of an officer of the employer, to keep the same there over night after applicant had finished his delivery work with the truck that evening; that applicant's injury arose out of his employment."

The interlocutory award provides:

"Within ten days from the date hereof, the respondent, Wisconsin Carbonic Gas Company, shall pay to the applicant, Albert C. Hammond, Jr., the sum of $137.75, and shall also reimburse the applicant in the sum of $50, for medical expense, or, in lieu thereof, pay said sum to Dr. George V. I. Brown, Milwaukee, Wisconsin.

"If the parties cannot amicably dispose of this matter, a further order will be entered after such further hearing as may be required."

Thereafter the plaintiff filed a petition for a review by the Industrial Commission of said findings and interlocutory award, and on January 10, 1934, the commission entered its order affirming the award. In the action brought in the court below to set aside the findings of fact and interlocutory award, the trial court affirmed the findings and award of the Industrial Commission, basing its decision on the decisions of this court in *Belle City M. I. Co. v. Rowland,* 170 Wis. 293, 174 N. W. 899; *Conveyors Corp. v. Industrial Comm.* 200 Wis. 512, 228 N. W. 118.

The appellant contends that there is no evidence to support finding No. 1; that said finding does not as a matter of law support the award, and that on the evidence and law judgment should have been rendered by the court below setting aside the finding and award. The only evidence bearing on Hammond's authority to take the truck to his home on the occasion in question is as follows:

"*Q.* On the date the accident happened how did you happen to have the truck at home?

"*A.* I helped unload the ice and when I was leaving an order came in to deliver some ice to the Soldier Boy Ice Cream Company. I was the only one there and he asked me if I would deliver it and he told me to never mind, to take the truck home with me.

"*Q.* Who told you to?

"*A.* Mr. Monteith."

When recalled for further examination Mr. Hammond testified:

"*Q*. Just what was it that Mr. Ed Monteith said about it the day of the fire? What did you say and what did he say?

"*A*. Mr. Monteith asked me to deliver this order of ice. And he asked me how I was going to get home. I told him I would bring the truck back and take the streetcar home. He said to never mind, I could take it home."

Mr. Hammond customarily used his own car in going to and returning from his place of employment. There is no testimony in the record to sustain a conclusion other than that the employer permitted Mr. Hammond the use of its truck to go home on the evening in question. In *Ohrmund v. Industrial Comm.* 211 Wis. 153, 246 N. W. 589, in which case the employee was injured while returning to work after having been home to dinner and while driving the employer's car which the employer had permitted him to use so he could hurry back to work, the court said:

"It is difficult to imagine what services the employee rendered to his employer in going to his home for this meal. During that period he was on his own time, he was subject to no control while away, he performed no act which in the slightest degree advanced his employer's interest. In hurrying back he was not rendering a service, he was returning to a place where he was required to present himself for the purpose of future service. It was a part of his duty as an employee to present himself at the place where the service was to be rendered. The master had not agreed to transport him and did not transport him. Therefore the relation of employer and employee did not exist until he returned to the place where, by the terms of employment, he was required to perform service. *Geldnich v. Burg,* 202 Wis. 209, 231 N. W. 624."

In the *Geldnich Case,* at page 212, it is said:

"The controlling consideration is whether, while upon such trips, the automobile is being used in the prosecution of the

master's or the servant's business. . . . In this case the master simply agreed to permit the servant to use one of his automobiles in going between his home and the garage. This does not amount to an assumption of the duty on the part of the master to transport the servant to and from his home to the place of employment. It goes no further than to permit the servant to use an automobile belonging to the master while making such trips. Such trips, however, continued to be the business of the servant, whether he paid for the use of the automobile or whether its use was extended to him as a matter of accommodation."

In *Bloom v. Krueger*, 182 Wis. 29, 32, 195 N. W. 851, the employee, during the lunch hour, used the defendant's motor truck in going to his home for lunch, and on returning to work injured the plaintiff. The court said:

"It seems incredible, assuming that the master had knowledge of and consented to the use of the truck, that either he or the employee had in mind any benefit that would accrue to the master by the permission to use the truck.

"The controlling fact in the case, which stands out foremost above all others, consists of the employee's use of the truck solely for the purpose of enabling him to obtain his noonday meal. Assuming that the employer either expressly or impliedly consented to the use of his truck for this purpose, such use was and must be deemed to have been solely for the employee's benefit during a period of time while the relationship of master and servant was suspended. An act of kindness on the part of the employer under such circumstances, while it may create a spirit of loyalty in the relationship existing between the employee and the master, cannot be construed to operate as a continuance of the relationship during a period where, under the law and the facts, such relationship has actually been suspended."

No claim is made in this case that the contract of employment requires transportation. The statute, sec. 102.03 (1) (c), provides:

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur: . . .

"(c) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment. Every employee going to and from his employment in the ordinary and usual way, while on the premises of his employer, shall be deemed to be performing service growing out of and incidental to his employment. . . ."

This statute does not include injuries received while going to and from work, off the premises of the employer. *E. W. Hallet C. Co. v. Industrial Comm.* 201 Wis. 182, 185, 229 N. W. 547.

Counsel for respondent Industrial Commission contends that regardless of how the truck happened to be at Hammond's home, even if he had violated his employer's orders by taking the truck home, he nevertheless was performing services for his master when he attempted to put out the fire, and is entitled to the benefits of the compensation act under the rule laid down in *Belle City M. I. Co. v. Rowland, supra.* We cannot sustain this contention. The facts in the case at bar are clearly distinguishable. In *Belle City M. I. Co. v. Rowland, supra,* the employee, while upon the premises of his employer, met death while fighting a fire which had broken out in one of the buildings of his employer. While it is true in that case that the employer's plant had closed and the employee had started for his home, immediately on discovering the fire he returned to the premises to help save his employer's property. It was contended in that case that the employee was not performing services growing out of and incidental to his employment. In affirming the award and judgment of the lower court, this court said:

"He must have entered the building voluntarily and knowing the possibility of danger in so doing from its being then on fire. But it is a reasonable inference that he did so for either one or both of these purposes: (1) Under the specific duty devolving upon him to have charge of and look after the valuable patterns essential for the work being done by his employer; (2) from the sense of obligation to use a reason-

able amount of care to save his employer's property at a time of such emergency. As to each of these it needed no specific instructions from any superior to perform such services or voluntarily assume such responsibility while making an effort within the field of reasonable care to save the property of his employer. While so doing he cannot be considered, as a matter of law, to be a stranger."

There may be circumstances where an employee, in assuming the responsibility of protecting the property of his employer off the premises of the employer, may be within the letter and spirit of the Workmen's Compensation Act, but this is not such a case. Hammond was a bailee of the truck for his own purpose, and, as bailee, owed a duty to prevent damage to his bailor's property. In such relationship it cannot be said that he sustained personal injury while performing service growing out of and incidental to his employment. The employer-employee relationship had terminated, and any effort which Hammond was making to put out the fire in the truck at the time he was injured was in the performance of a plain duty he owed as a bailee of the truck.

In view of the conclusion reached, which results in reversing the judgment of the lower court, it would serve no useful purpose to discuss further findings or other provisions of the award as made by the Industrial Commission and affirmed by the trial court.

*By the Court.*—Judgment reversed. Record remanded with instructions to vacate the award.