BERG and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*October 11—November 8, 1940.*

*Alfred E. La France* of Racine, for the appellants.

For the respondents there was a brief by *Roberts, Roe & Boardman* of Madison, attorneys for Minnie Berg, and by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and oral argument by *W. Wade Boardman* and *Mortimer Levitan.*

FRITZ, J. In the proceedings before the Industrial Commission, which resulted in an award of death benefits to be paid by plaintiffs to Minnie Berg on account of the fatal in-

jury of her husband, Peter Berg, while in the employ of the plaintiff, Clarence Berg, it appeared that the injury was sustained under circumstances entitling him to compensation benefits; that he died on October 20, 1937; and that Minnie Berg is his widow. The only question in issue was whether she was living with the deceased at the time of his death within the meaning of sec. 102.51, Stats. In the proceedings pursuant to her application, testimony was first taken at hearings held by Examiner Pottinger, who made findings upon which he concluded that the applicant was not living with her husband at the time of his death, and therefore the examiner ordered the dismissal of the application. Thereupon she filed a petition under sec. 102.18 (2), Stats., for a review of the examiner's findings and pursuant thereto the commission set aside the findings and order, and ordered the matter scheduled for a further hearing. Pursuant thereto additional testimony was taken on September 30, 1938, before Examiner Martin who promptly made and filed a memorandum of the evidence taken before him. However, the shorthand reporter's stenographic notes of the testimony taken at that hearing were not transcribed and filed until March 6, 1939. In the meantime, on January 20, 1939, the commission (by the concurrence of Commissioners McLogan and Griswold, but with Commissioner Wrabetz dissenting) made findings of facts upon which it concluded "that applicant was living with the deceased at the time of his death within the meaning of sec. 102.51 (1), Stats., and therefore is conclusively presumed to be solely and wholly dependent for support upon the deceased Peter Berg," and thereupon the commission ordered the payment of the death benefits in question to the widow. The award was confirmed by the circuit court judgment under review.

Plaintiffs' first and second assignments of error are that the commission's findings of fact do not support its award, and therefore it should have been vacated by the court; and

that the testimony does not justify the commission's findings and conclusion of law that Minnie Berg was living with her husband at the time of his injury so as to entitle her to the death benefits under the compensation act, and therefore the award should have been set aside by the court. For the consideration of these assignments of error it suffices here to note the following facts established by testimony as to which there is but little dispute or conflict in any material respect.

Peter and Minnie Berg were married in 1889. They had four sons and one daughter, all of whom are living. Since prior to 1902 he was always a heavy alcoholic drinker. Up to 1920 the family lived on a farm near Marshfield, which he conveyed to his wife in March, 1902, to avoid losing it as the result of his dissipation, but she reconveyed forty acres to him. In 1920 she deeded the farm to their daughter Minerva and her husband, Fred Loder, and Peter Berg and his wife and family moved to Marshfield, and shortly thereafter bought a home there which was likewise deeded to her so that he would not "drink it up," and in which they continued to live together. He worked on his forty-acre tract in the summertime, and in the woods in the winter, and in 1929 or 1930 he started to work in a son's factory in Marshfield. During all of this time he continued an alcoholic, and in 1934 became a real problem to the family because of drinking heavily as usual. Mrs. Berg had high blood pressure, hardening of the arteries and diabetes, and was afraid he would be run over and worried about him, so that the sons felt they could not leave the father at home. For a time they put up a cot for him in the son's factory where he could stay nights, but about the first of the year 1935 they arranged with him that he should stay on the Loder's farm. He did so and took along such clothes as he needed, but left the rest together with his personal effects in the family home in Marshfield, where his room always remained ready for him. It was never intended by anyone that his going to the farm would be perma-

nent, and there was considerable discussion between him and his wife about his returning home. He always referred to the Marshfield home as "home," and the farm as "the farm." While he was staying in Marshfield and working at his son's factory, Mrs. Berg discussed her financial needs with him and he helped her out with whatever she needed; and after going away he continued to give her money from time to time, and supplies from the farm and groceries from the store; and also gave the children money to give to her. He told her that if she should run short and he was not in town, she should go to the boys as they owed him money, and he told them to use the money they owed him for their mother as they might see that she needed things. On the other hand, she did the washing and ironing for her husband while he was at the farm, and always told him that whenever he was sick he could come home, but when he felt good and while he was drinking he could stay at the farm. When he was sick she went out to him and on one occasion said he should come home, but he did not do so because he was on a strict diet and would be quite a care. In spite of his weakness for alcohol they were always a devoted couple, and he had the highest regard and love for her and never abused her, and there was no trouble between them excepting that when he became intoxicated he would be beyond control. Whenever he got the chance he came from the farm to visit with her at Marshfield and would stay at the home all day and go back at night. Likewise, she would visit him at the Loder farm two or three days in succession and almost every Sunday, depending upon the weather in the wintertime. In the summers of 1936 and 1937 he worked with a construction gang for his nephew Clarence Berg, the plaintiff, and when he was in a construction camp he and his wife would correspond regularly. He never missed her birthday even though he was far away, and but a month before his fatal accident he had someone drive him from La Crosse to Marshfield so as to be with her on her birthday.

They then planned that she should visit him at La Crosse, but this was prevented by the accident and he then wanted to be taken to the home at Marshfield, but upon the doctor's orders he was taken to a hospital in Marshfield. When his wife visited him there the first evening he said "Minnie, take me home or you won't be able to take me no more." He died in the hospital.

Plaintiffs claim that because it appears from these facts and other circumstances that Peter Berg and his wife were separated in July, 1934, by reason of his excessive drinking and her impaired health, and that these reasons continued up to the time of his death without any improvement in either respect, neither the facts so found nor the evidence justified the commission's conclusion that she was living with her husband at the time of his death within the meaning of sec. 102.51 (1), Stats. In making that claim, as well as in their contentions in support of the errors assigned, as stated above, plaintiffs fail to give due consideration to the meaning intended by the legislature in using the words "with whom she is living" in the provision in sec. 102.51 (1), Stats., that a wife of a deceased employee shall be conclusively presumed to be solely and wholly dependent for support "upon a husband with whom she is living at the time of his death." Under the construction which must be given to these words, a wife is deemed to be living with her husband when there is no legal separation and no actual separation in the nature of an estrangement. As this court said in construing that provision in *Northwestern Iron Co. v. Industrial Comm.* 154 Wis. 97, 101, 142 N. W. 271,—

"It seems, therefore, quite obvious that the legislature intended by the use of the words to include all cases where there is no legal or actual severance of the marital relation, though there may be physical separation of the parties by time and distance. The 'living together' contemplated by the statute, we think, was intended to cover cases where no break in the

marriage relation existed, and therefore dwelling together is not necessary in order to bring the parties within the words 'living together.' There must be a legal separation or an actual separation in the nature of an estrangement, else there is a 'living together' within the meaning of the statute. This seems to be the reasonable and practical construction of the law, and the one which we think the legislature intended."

This construction was applied in *Belle City M. I. Co. v. Rowland,* 170 Wis. 293, 174 N. W. 899; *Woman's Home C. R. Club v. Industrial Comm.* 231 Wis. 371, 373–375, 285 N. W. 745; and is likewise applicable in the case at bar. Consequently, the mere facts that there was a physical separation by reason of Peter Berg's alcoholic habits, coupled with his wife's impaired health, because of which he could not be left at home with her, and that because of these unfortunate conditions the separation continued to the time of his death, do not necessitate the conclusion that she was not living with him at that time within the meaning of sec. 102.51 (1), Stats. On the contrary, the commission's determination that she was so living with him is warranted by the indisputable fact that there never was a legal or actual severance of or break in the marital relation which continued to exist between them. .That is of controlling significance. On the other hand, physical dwelling together is not necessary to bring the parties within the meaning of the words in question. Moreover there was not even any estrangement between Peter Berg and his wife. Instead, it appears that up to the time of his death their relationship continued to be affectionate and cordial; that neither of them ever intended that his residing away from home was to be permanent; and that his room in the home and the personal effects, which he had there, were kept ready for him with the expectation by each that he would stay there whenever he was sick or recovered from his alcoholism.

Plaintiffs' third assignment of error is that the Industrial Commission as a body did not have before it a transcript of

the testimony taken at the hearing before Examiner Martin on September 30, 1938, and that consequently the commission did not base its award upon a review of the evidence as required by statute, and therefore the circuit court should have vacated the award. In connection with that assignment of error, plaintiffs also contend that the commission as a body did not base its action of July 1, 1938, in setting aside the findings and award made by Examiner Pottinger, on a review of the evidence submitted, as is required by sec. 102.18 (3), Stats. There does not seem to be any basis on the face of the record for the latter contention. In connection with the order of July 1, 1938, there is the recital that the commission "reviewed the entire record." That presumably includes a review of the evidence taken by Examiner Pottinger, a transcript of which, together with a memorandum thereof prepared by him, was part of the record; and in view of that recital, and the "rule in favor of the presumption of regularity of official acts" (*Hackley-Phelps-Bonnell Co. v. Cooley,* 173 Wis. 128, 134, 179 N. W. 590), and the absence, on the other hand, of any proof that the evidence so taken was not submitted as part of the entire record which the commission reviewed, we would be required to conclude, if the question were properly here for review, that the commission complied with the procedure prescribed by sec. 102.18 (3), Stats., in reviewing and setting aside on July 1, 1938, the findings and order made by Pottinger. However, as is contended by respondents, the commission's order of July 1, 1938, is not subject to judicial review in this action or otherwise. As we held in *Schneider Fuel & Supply Co. v. Industrial Comm.* 224 Wis. 298, 301, 272 N. W. 25, no action to review such an order setting aside an examiner's findings and award and ordering the matter scheduled for further hearing is authorized by the compensation act; and the only purpose for which an action can be maintained under sec. 102.23 (1), Stats., is to review either an award of compensation or an order which denies

compensation. Likewise, because there is no statutory provision authorizing judicial review at any other time of such an intermediate order, there can be no review of the commission's order of July 1, 1938. In this respect we must withdraw the *obiter dictum* statement in the *Schneider Fuel & Supply Co. Case, supra,* that such an order may be reviewed in an action brought to review a subsequent award or an order denying compensation.

Upon a review of the record we find that it does not warrant sustaining plaintiffs' third assignment of error, viz., that the award of January 20, 1939, should have been vacated by the court on the ground that it could not have been based upon a review of the evidence by the commission, as required by statute, because of the fact that the transcript of the reporter's stenographic notes of the testimony taken by Examiner Martin was not made and filed until March 6, 1939. It is true, as plaintiffs contend, that an award cannot be sustained if the plaintiffs establish by competent proof, in an action brought to vacate the award, that the commissioners in making the findings and the award "failed to read or have read to them a transcript of the evidence or phonographic notes thereof, or to otherwise duly address themselves to that evidence." *State ex rel. Madison Airport Co. v. Wrabetz,* 231 Wis. 147, 153, 285 N. W. 504. In the case at bar the parties stipulated that the reporter's notes of the testimony taken by Examiner Martin on September 30, 1938, were not transcribed and filed by the reporter until March 6, 1939, which was after the commission made its award on January 20, 1939. On the other hand, there is included in the commission's file, which is part of its return in this action, a typewritten "memorandum of the evidence" taken on September 30, 1938, before Examiner Martin, which was made by him; and there is nothing in the record and no contention by plaintiffs that this "memorandum of the evidence" is not a fair and full statement of the essential testimony, or that it

was not available for the use of the commissioners and was not read by or to them before they made the findings and award. Their resort to and their reliance upon such a memorandum, prepared by a competent and impartial official member of the commission's staff, is permissible and proper, and a determination made by the commission after such use does not constitute a denial of due process of law. *Morgan v. United States,* 304 U. S. 1, 58 Sup. Ct. 773, 82 L. Ed. 1129, 1132; *National Labor Relations Board v. Biles Coleman L. Co.* (9th Cir.) 98 Fed. (2d) 16, 17. It follows that in the absence of any offer by plaintiffs of competent proof to establish the contrary, the record herein fairly admitted of the court's finding that the commissioners as a body did sufficiently address themselves to the evidence, including the testimony that was taken at the hearing before Examiner Martin on September 30, 1938, and that the commission did not act either without or in excess of its powers in making the findings and award in question.

*By the Court.*—Judgment affirmed.