SAMP, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*March 13—June 1, 1942.*

*Orville S. Luckenbach* of Shawano, for the appellant.

For the respondent Industrial Commission there were briefs by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

On the motion for rehearing, a brief *amicus curiæ* was filed by *Otjen & Otjen* of Milwaukee.

The following opinion was filed April 7, 1942:

FRITZ, J.   Plaintiff's application for the payment of benefits on account of the death of her husband, William Samp, while in the employ of Montgomery Ward & Company, was denied by the Industrial Commission upon its findings and conclusions that she "was not living with the deceased at the time of his injury and death," and "that she was not actually dependent upon him for support at such times;" and the issues on appeal are whether there is credible evidence warranting the commission's determination, in view of the provisions in sec. 102.51, Stats., that,—

"(1) The following shall be conclusively presumed to be solely and wholly dependent for support upon a deceased employee : A wife upon a husband with whom she is living at the time of his death; . . .

(2) (a) No person shall be considered a dependent unless a member of the family or a spouse, or a divorced spouse who has not remarried. . . ."

In construing the words "with whom she is living," as used in the above-quoted sub. (1) of sec. 102.51, Stats., we said in *Berg v. Industrial Comm.* 236 Wis. 172, 177, 294 N. W. 506,—

"Under the construction which must be given to these words, a wife is deemed to be living with her husband when there is no legal separation and no actual separation in the nature of an estrangement.   As this court said in construing that provision in *Northwestern Iron Co. v. Industrial Comm.* 154 Wis. 97, 101, 142 N. W. 271, 'It seems, therefore, quite obvious that the legislature intended by the use of the words to include all cases where there is no legal or actual severance of the marital relation, though there may be physical separation of the parties by time and distance.   The "living together" contemplated by the statute, we think, was intended

to cover cases where no break in the marriage relation existed, and therefore dwelling together is not necessary in order to bring the parties within the words "living together." There must be a legal separation or an actual separation in the nature of an estrangement, else there is a "living together" within the meaning of the statute. This seems to be the reasonable and practical construction of the law, and the one which we think the legislature intended.' This construction was applied in *Belle City M. I. Co. v. Rowland,* 170 Wis. 293, 174 N. W. 899; *Woman's Home C. R. Club v. Industrial Comm.* 231 Wis. 371, 373–375, 285 N. W. 745."

In the case at bar there had been no legal separation. Consequently, whether the commission was warranted in determining that plaintiff was not living with her husband at the time of his death,—within the meaning of the clause "with whom she is living," as used in sec. 102.51 (1), Stats.,—depends upon whether there was then an "actual separation in the nature of an estrangement." On that particular issue no specific finding was made by the commission. The evidence material on that narrower issue is virtually undisputed and to the following effect. About April 1, 1939, plaintiff left the apartment which she and her husband had in Green Bay and went to the home of her sister, Ruby Cooper, at Shawano Lake. A few days later plaintiff, during her husband's absence, returned with her sister in the latter's coupe and removed from the apartment to the sister's home some of plaintiff's clothes, a couple of quilts and pillows, and a few other small articles, which had been loaned to her by her mother. She consulted an attorney, who prepared a summons and complaint for divorce on the ground of cruel and inhuman treatment, and an affidavit and order to show cause for hearing in relation to alimony for her support *pendente lite.* These papers were served on her husband on April 11, 1939. In the course of his employment on April 12, 1939, he had to drive to Shawano, and on his return route he stopped at Al Storhl's hotel, which was one hundred feet from Ruby

Cooper's cottage. Storhl testified that Samp told him that he and his wife had a little squabble, which did not amount to anything; that he had been served with a divorce action, and "it don't mean a thing. I love her and she loves me;" that he wouldn't stand for a divorce because he loved his wife, and "it will all be patched up anyway;" and that he wanted to get in touch with her and bring her home. He asked Storhl to telephone to her, but Storhl said he did not have time. Plaintiff testified she started the divorce action with the idea of bringing Samp to time and had no intention of divorcing him; that when she left Green Bay she did not have in mind to consult an attorney for a divorce, but had to talk to somebody about getting along; that she did not attempt to contact her husband, but was waiting for him to come to her first; and that while living with him he always supported her, and when she left Green Bay she had about $10, which was money he had given her. Ruby Cooper testified that plaintiff was waiting for Samp to call her, but made no attempt to see him and was afraid of him. Miss Cooper also testified she and Samp were not on good terms and if he had not seen her when he talked to Storhl he probably would have gone over to her house, but that it was hers and he did not frequent around there when she was home; that she told plaintiff that Samp was looking for her, but, because plaintiff always did run up to Samp and she did not want her to see him, she expressly told plaintiff not to see him and that she had better go upstairs and to bed.

In view of the facts and circumstances thus established without any material conflict in the testimony, it is evident that, although plaintiff had left and did not live in their apartment for eleven days preceding Samp's death on April 12, 1939, and had removed some of her personal effects and had commenced the action for divorce, there did not exist any such ill will or animosity between her and Samp, or any such definite termination of their mutual affection and desire to preserve

their marital relations, as to reasonably admit of finding that there existed between them an estrangement and such actual separation in the nature of an estrangement as to constitute in effect an actual or positive severance of the marital relation. Although the commencement of a divorce action might be deemed to indicate, under some circumstances, an intent to obtain a legal separation, that is definitely refuted by the uncontroverted testimony that plaintiff knew Samp cared a lot for her and she cared for him and would not give him up, and that she was waiting for him to come to her first, and knew that it would bring him to time. And that she evidently was right in these conclusions is corroborated by the fact that Samp stopped at Storhl's hotel for the purpose of arranging to meet the plaintiff, and by Storhl's testimony as to Samp's desire to then see and get in touch with her and his statements that he was going to take her back home and that he loved her and she loved him; that the divorce action did not mean a thing; and that he and his wife had just another squabble which did not amount to anything. Under the undisputed proof as to their continuing affection and actual objective, as evidenced by Samp's reaction after even the service of the summons and complaint, it is obvious that neither of the parties was intent upon having a divorce, and that but for Samp's death the commencement of the divorce action would probably have resulted in bringing him to time and effecting a reconciliation, as was intended by plaintiff. That such is often the purpose and result under similar circumstances is a matter of common knowledge among lawyers.

As there was no legal separation and no actual separation in the nature of an estrangement, it follows that the commission's determination that plaintiff "was not living with the deceased at the time of his injury and death" cannot be sustained; and that, in lieu thereof, the plaintiff must be deemed,—in view of the meaning of the clause "with whom she is living" as used in sec. 102.51 (1), Stats., and construed in the cases cited

above,—to have been living with her husband at the time of his death. As that must be held to have been their status, there is applicable the rule prescribed by sec. 102.51 (1), Stats., that a wife so situated "shall be conclusively presumed to be solely and wholly dependent for support upon a deceased employee. . . ." Consequently, the award made by the commission should have been vacated and set aside; and therefore the judgment under review must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment setting aside the award and. remanding the record to the Industrial Commission for further proceedings.

A motion for a rehearing was denied, without costs, on June 1, 1942.