MELLI, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*October 12—November 7, 1956.*

For the appellant there was a brief by *Stroud, Stebbins, Wingert & Stroud* and *Richard L. Cates,* all of Madison, and an oral argument by *Mr. Cates.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent American Brass Company there was a brief by *Shaw, Muskat & Paulsen,* attorneys, and *F. H. Prosser* of counsel, all of Milwaukee, and oral argument by *Mr. Prosser.*

STEINLE, J. The challenge here is to the commission's findings that there was no causal connection between appellant's injury and his claimed disability. The question presented for determination is whether there was credible evidence to sustain the findings of the commission.

The cause is controlled by principles as follows: Causal relation between an injury and disability presents a question of fact for the commission. *Harnischfeger Corp. v. Industrial Comm.* (1948), 253 Wis. 613, 34 N. W. (2d) 678. Where there is a difference of opinion between the medical experts as to the cause of an employee's injury or disability, it is for the commission to make a finding as to the matter, and unless such finding is clearly against all of the credible testimony, or so inherently unreasonable in itself as not to be entitled to any weight, the conclusion of the commission is final. *Hinch v. Industrial Comm.* (1951), 260 Wis. 47, 49 N. W. (2d) 714. If there is credible evidence to sustain the findings of the commission, such findings are not to be disturbed on appeal. *Gallenberg v. Industrial Comm.* (1955), 269 Wis. 40, 68 N. W. (2d) 550; *Hemans v. Industrial Comm.* (1954), 266 Wis. 100, 62 N. W. (2d) 406. The burden of proving that an injury caused claimed disability rests on the claimant who has the burden of proving all facts essential to compensation. *Molinaro v. Industrial Comm.* (1956), 273 Wis. 129, 76 N. W. (2d) 547. If the evidence before the commission is such as to raise in the minds of the commission a legitimate doubt as to the existence of facts essential to

compensation, it is the duty of the commission to deny compensation, on the ground that the applicant did not sustain the burden of proving to the satisfaction of the commission that the facts were as he claimed them to be. *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 12 N. W. (2d) 42.

It is not disputed that on February 15, 1953, the appellant, Anthony Melli, then aged thirty-seven years, suffered a strain to his right shoulder and arm while working on a machine at the plant of his employer, American Brass Company. The injury occurred when a metal bar that he was holding pushed his right arm back as he was in the process of feeding copper bars through sets of rolls. The injury was slight although appellant at the time experienced some physical pain. The physical basis for the pain disappeared some weeks after the injury.

At the hearing the appellant testified that on two occasions prior to the accident in question he had been slightly injured while operating the same machine. He indicated that he had become apprehensive and tried to convince the employee in charge that the machine ought to be fixed. He claims that he was told to operate the machine anyway, and that immediately thereafter the stick kicked back and his arm was struck.

The accident in question occurred around 2 p. m., to 3 p. m., and a few minutes after the occurrence the appellant went to the first-aid station at the plant where heat treatment was administered to him. He returned to his work that afternoon and remained until his day was finished at 6 p. m. He was examined by various doctors thereafter and was treated by some. He received many diathermic treatments at the company's first-aid station until October 19, 1953, when the company declined to furnish further medical aid. He had been placed on light duty for awhile after the accident, but continued to work for the employer with regularity (excepting for one week in January, 1954) until April 20,

1954, when he was laid off because he claimed he was physically unable to do his work.

Appellant has had a psychoneurotic personality most of his life. He received a medical discharge from the United States army in 1945 as a psychoneurotic, after he had served in the army for three years, eighteen months of which time was spent on New Guinea. He had attained the rank of sergeant. When released from the service he obtained work at the Nash plant at Kenosha, held the job for six months and left because of alleged anxieties. Thereafter he worked for American Brass Company for two or three months. He left that employment because the noises in the hot-press department bothered him. Thereafter he received psychoneurotic outpatient treatment for two years at the Veterans' Hospital at Wood, Wisconsin. He receives disability compensation from the federal government for nervous dermatitis, the employment records of defendant indicating that such disability was 60 per cent. He again started to work for the American Brass Company on March 6, 1950, and remained in the employ of that company until April 20, 1954, with interruptions only as hereinbefore indicated. From March 6, 1950, and until the accident he lost no time at his work, and built a dwelling house during off hours. His application for adjustment of claim was served April 20, 1954. At the hearings before the commission in 1954 he maintained that he had never been without pain in his shoulder from the time of the accident.

It is contended on appellant's behalf that, notwithstanding the absence of a pathological basis for his claimed pain, he does possess an honest; fixed, definite, and continued belief that he is suffering pain,—a condition designated as conversion reaction, which is a subclassification of neurosis, and which condition was precipitated by the injury to his arm and shoulder on February 15, 1953.

Dr. Harold N. Lubing and Dr. Thomas H. Lorenz, both of whom are specialists in psychiatry, and who had examined appellant, testified as expert witnesses called by appellant, that in their opinion the injury which occurred on February 15, 1953, was the cause of his continued disability. They diagnosed appellant as a psychoneurotic personality, who because of his trauma received at a time when he was emotionally disturbed, had thereafter developed what Dr. Lubing termed "a conversion reaction or hysteria" and which Dr. Lorenz designated as "painful stiff shoulder syndrome" (an identical situation to conversion reaction), and which both doctors said was a condition of disability which remained despite the absence of a physical basis for it. Dr. Lubing defined conversion reaction as "a physical reaction resulting from underlying psychological difficulties. The patient has physical symptoms which are not on a physical basis but some underlying psychological or emotional basis." Both doctors testified that appellant possessed an honest, fixed, definite, and continuing belief that he is suffering severe bodily pain. It was the opinion of these doctors that appellant's disability remained because the emotional reasons for its existence had continued. It was their view that the condition was influenced by the experiences of the appellant at the hands of doctors who had treated him and by the company that employed him. While maintaining that in the instant situation the injury to the shoulder was the precipitating factor, both doctors nevertheless testified that a neurosis of this type may result from "anything," either trauma or experiences such as marital difficulties, death or illness in the family, military service, etc. Dr. Lorenz testified that appellant was not a psychotic personality. Dr. Lubing stated "This is a neurosis case." Dr. Lubing also pointed out that a person cannot be psychoneurotic and psychotic at the same time for the reason that psychosis is mental illness where a person is

disturbed to a point where he does not have contact with reality, whereas a conversion reaction exists when pain is caused by emotional and psychological factors.

Dr. Chester A. Sattler, an orthopedic surgeon who frequently came into contact with psychiatric cases, was called as a witness by the employer. He testified that he had examined appellant on various occasions between April 13, 1953, and May 13, 1954. He stated that appellant had a complete range of shoulder motions on April 16, 1953, and on April 21, 1953, and that by April 24, 1953, he had no complaints whatever and was completely happy; that although he complained again of pain on June 29, 1953, and July 13, 1953, he still had complete range of shoulder motions without any atrophy; that his alleged area of altered sensation did not follow any neurological pattern; that X rays were negative and that there were no reflex changes; that he had made a complete recovery from the physical disability in the right shoulder; that his present complaints are not justified; that any existing psychiatric problem is not related to the injury of February 15, 1953; that "at one time we saw things that were definitely evident,—that he was a conversion hysteria; that he no longer had a physical disability but that he had something far deeper than that, and that, of course, is a psychopath."

Also called as a witness by the employer was Dr. Glenn Alfred Bacon, a psychiatrist and neurologist experienced in handling and treating conversion hysteria cases, who had examined the appellant. His diagnosis of appellant's condition was schizophrenic psychosis of the paranoid type. He testified that appellant's suggested complaints over the biceps region of the arm does not follow any nerve distribution, and that there is no objective evidence of any sensory or motor impairment of any of the nerves that enervate the arm; that if the appellant experienced pain as he claims, it would be necessary to have much more objective evidence of disability

than exists; that the appellant's injury of February 15, 1953, did not result in a psychosomatic condition.

Other medical evidence presented by the employer referred principally to a lack of physical basis to substantiate appellant's claim of pain.

In the main the question confronting us involves largely a consideration of the medical evidence. The testimony of Drs. Lorenz and Lubing is to the effect that appellant was suffering from traumatic neurosis caused by the accident in question. From the testimony of Dr. Sattler it may be inferred that any pain suffered by appellant as a result of the accident, whether physical or psychological, ceased by April 24, 1953. He testified that any existing psychiatric problem of the appellant is not related to the injury sustained in the accident. Dr. Bacon found that the appellant was psychotic and that the injury to the arm and shoulder at the time of the accident did not result in a psychosomatic condition.

The views of the doctors are clearly in conflict. The weight and credibility of their evidence was for the commission to determine.

Appellant argues that the testimony of Dr. Sattler was so impeached by his own conduct and records as to make the same not reliable. It is also maintained that the evidence indicates prejudice on the part of Dr. Sattler toward appellant. Such considerations were for the commission. Appellant also maintains that Dr. Bacon's diagnosis of psychosis is contrary to the undisputed evidence relating to appellant's activities particularly since the time of his entrance into military service. The record reveals that Dr. Bacon's diagnosis was based in part on tests that are recognized and employed by the medical profession for the determination of mental and nervous conditions, and which were administered to the appellant by an assistant of Dr. Bacon at the direction of the doctor. It seems clear that a diagnosis may be effectively foundationed on such tests. It is also argued that for the reason that Dr. Bacon

spent but one-half hour in making a physical and mental examination of the appellant, and that the examination was conducted under adverse circumstances due to the attitude of appellant, it was impossible for the doctor to properly evaluate appellant's condition. It is to be noted that the time spent by Dr. Bacon in his examination was in addition to the time used by his assistant in making the tests. We are not persuaded that a proper evaluation could not possibly have been made upon the basis of such examination and tests. Dr. Bacon testified that the situation under which he was required to make his diagnosis was most difficult because appellant was very guarded, hostile, and suspicious. Notwithstanding such situation, it does not appear that the examination, tests, and diagnosis were impossible of performance. In each of these respects the weight and credibility of the evidence was for the commission.

The commission found that while appellant suffered injury resulting in strain to his right arm on February 15, 1953, the employer furnished all necessary treatment for the care and relief of disabilities resulting therefrom, and that he suffers no physical impairment of his arm or shoulder; that he remained on the job until April 20, 1954; that he receives 50 per cent total disability compensation from the federal government, having been discharged from the army because of a psychoneurosis; that the injury did not result in any permanent physical disability to appellant's right arm or shoulder or impairment of such member; that any disability the appellant has been suffering from since he left work for the respondent is due to factors not associated with his employment, and that his employment by the respondent in no way aggravated any condition from which he might have been suffering prior to his last employment by the respondent.

It was clearly within the province of the commission to have based these findings upon a consideration of the evidence to the effect that no disability, physical or mental,

resulting from the injury of February 15, 1953, remained after April 24, 1953; or upon the evidence which indicated that the appellant was psychotic; or upon evidence which raised legitimate doubt in the minds of the commission as to the cause of any existing disability. It cannot be held that any one of such considerations was not sufficient to support the findings. We are obliged to determine that since there is evidence of record which the commission was entitled to deem credible and which warranted the commission's finding of no causal relationship between the injury and the claimed disability, the judgment of the lower court must be sustained.

*By the Court.*—Judgment affirmed.

WINGERT, J., took no part.