Oscar Mayer & Company, Appellant, vs. Industrial Commission and another, Respondents.

*October 11—November 5, 1935.*

For the appellant there was a brief by *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *Frank A. Ross.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

Fowler, J. The case is before the court on the appeal of an employer from a judgment of the circuit court affirming

an award of the Industrial Commission of compensation to an employee for wage loss sustained through pneumonia, found by the commission to have resulted from a small sliver in his cheek received while carrying pieces of wood on his shoulder in performing service growing out of and incidental to his employment. The appellant contends that the record is without evidence to support the finding of causal connection between the penetration of the sliver and the pneumonia with which the employee became afflicted some twelve days afterwards. The matter came before the commission upon the petition of the employer for review of the findings and order made by an examiner which the commission affirmed. In its statement prefacing its affirmance the commission states:

". . . It seems to the commission that the only question as to which there is serious doubt is that of whether a following pneumonia was occasioned because of the facial infection. There is agreement by the doctors that the infection might spread into the blood stream and, localizing in the lungs, result in pneumonia. The commission believes that in view of the nature of the infection, and the sequence and continuity of events, the preponderance of probabilities point to the development of pneumonia because of the bacteria resulting from the facial infection having gained entrance into the blood stream and localized in the lungs."

The "nature of the infection and the sequence and continuity of events" referred to in the statement above quoted, stating them as favorably as may be for the employee, may be summarized as follows: A piece of wood fell from his shoulder over onto the employee's cheek on September 9th and made three scratches. A sliver entered his cheek, but was so small and insignificant that the employee did not know of its presence. On the 12th, at night, the place where the sliver entered itched, and the employee's wife removed the sliver with a needle dipped in mercurochrome. The next day the employee "opened up" the place with his hand. The place "swelled" on the 15th, but the swelling subsided on

application of poultices.  There was not much swelling on the 16th, but the place had adhesive tape over it, and the employee's "boss" sent him to a nurse kept on duty at the employer's plant.  The nurse told him to see a doctor, but he did not do so at once because he did not have "the means." He was not told what doctor to see, and was not told to see the company doctor.  A doctor first saw him on the 17th. He then had cellulitis and a temperature of ninety-nine and four-tenths degrees.  He was advised to apply hot applications.  The next day his temperature "seemed" higher.  He was advised to continue with more hot applications.  On the 24th he had a temperature of one hundred and two degrees, and was breathing quite hard and had a very definite beginning of pneumonia.  He first went to a hospital on September 19th.  After four or five days at the hospital his face began to drain without opening and improved and the infection subsided in about ten days.  The pneumonia began on the 21st, and was not present before the 20th.

As to the "preponderance of probabilities" referred to in the statement of the commission above quoted, two physicians testified, both of whom were produced by and saw the employee while sick with pneumonia and one of them saw him twice before pneumonia developed.  One of them said that infections of the face have a tendency to get into the blood stream more easily than those of the hand or arm, and that he believed there was an infection of the blood stream because there was an infection of the face and the patient was "so toxic," and he believed there was a close association between the infection and pneumonia.  The other doctor testified that the cheek infection was a streptococcic infection; that pneumonia may result both directly and indirectly from an infection on the body; directly from blood stream transmission and indirectly by a lowering of the patient's general resistance.  Pneumonia results from pneumococci, which are present in the throats of most people,

descending into the lungs. One cannot ascertain what causes their descent in any particular case. The connection between face infection and pneumonia in the instant case cannot be proven. One may not say that a single thing is the cause of pneumonia. There was no demonstratable evidence of infection in the blood stream. It was his opinion that it was possible that there was an infection in the blood stream. Two blood tests were negative. The employee had pneumonia a year prior to the infection involved.

Upon this evidence we are of opinion that there was not only no "preponderance of probabilities" of "development of pneumonia because of bacteria resulting from the facial infection" entering the blood stream, but there was no probability at all. There was nothing more than a possibility. The Industrial Commission cannot base awards upon possibilities. There must be at least some proof of every fact essential to the support of the award. The commission's award is based upon the inferred fact that the facial infection entered the blood stream. There is no evidence that it so entered.

For the reason above stated, the award of the commission must be set aside so far as it is based upon pneumonia. However, one of the doctors stated that he would have hospitalized the employee had he not had pneumonia. The employee therefore suffered some wage loss from the facial infection. The doctor stated he would have discharged the employee when the infection cleared up and he might then have gone back to work. It does not appear from the evidence how much loss of wage is attributable to the facial infection alone. The record should be remanded to the commission, with direction to determine that question, and the expense of hospitalization and physician's services attributable to the facial infection alone, and to take evidence bearing upon those questions if unable to determine them upon the record before it.

The appellant also contends that the commission should have granted its petition for a new trial upon newly-discovered evidence tending to show that the claimant did not get any sliver in his face while working for the plaintiff. We perceive no error in this respect.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter an order vacating the award and remanding the record to the Industrial Commission for further proceedings in accordance with this opinion.