BEEM, by Guardian *ad litem*, Respondent, vs. INDUSTRIAL COMMISSION and others, Appellants.

*November 12—December 7, 1943.*

336

FAIRCHILD, J. The proof under which the Industrial Commission is to act must be based on competent legal evidence, and must amount to something more than a mere guess, conjecture, or surmise. 2 Jones, Evidence (2d ed.), p. 945, sec. 520. The problem of the cogency of an inference "involves (as all other judicial inferences do) the question how many and what other hypotheses there are which explain away the evidential fact," asserted as due to some other cause than the one described. 3 Wigmore, Evidence (3d ed.), p. 362, sec. 874. The decision of the Industrial Commission disallowing a claim is not to be disturbed when the evidence warrants doubt that the condition causing the disability arose out of the employment. The rule has been stated to be: "If the evidence before the commission was such as to raise in the minds of the commission a legitimate doubt as to the existence of facts essential to compensation, it would be the duty of the commission to deny compensation, on the ground that the applicant did not sustain the burden of proving to the satisfaction of the commission that the facts were as he claimed them to be." *Winter v. Industrial Comm.* 205 Wis. 246, 250, 237 N. W. 106; *Rutta v. Industrial Comm.* 216 Wis. 238, 257 N. W. 15; *Hills Dry Goods Co. v. Industrial Comm.* 217 Wis. 76, 258 N. W. 336; *Milwaukee E. R. & L. Co. v. Industrial Comm.* 222 Wis. 111, 267 N. W. 62; *Bowen v. Industrial Comm.* 239 Wis. 306, 1 N. W. (2d) 77.

In judging the testimony on recollection offered by ap-
plicant in support of his claim that he was injured while en-
gaged in his employment of delivering papers for his em-
ployer, the commission became convinced that he really did not
know when or how the troublesome injury occurred. Whether
he was hurt while so engaged was the important fact. A fact
which he must show to have existed. Because of inconsisten-
cies in his testimony and a showing of bias, the commission
concluded that the burden of proving that the injury occurred
while discharging the duties of his employment was not met.

The record discloses the reason the commission was of the
opinion that it was required to reject the respondent's story
as to the way and the time the injury was received. From
the testimony it was convinced that respondent did not know
when he was hurt and a desire for compensation prompted
him to conjecture as to how it happened. It believed that
what may be styled practical considerations brought the as-
sertion that the injury was sustained while on his newspaper
route. The conclusion reached by the commission was that
the evidence was such that a legitimate doubt existed that the
condition causing the discomfort arose out of his employment.
The time element and memory defects which destroyed the
convincing quality of the testimony in the judgment of the
commission appear from a brief reference to the witness' ex-
amination. The scratch appeared July 21, 1941; the ap-
plicant told his mother that night that he did not know how he
had been hurt. On July 28th, he did not know. On that day
he consulted a doctor because a serious condition had de-
veloped. He gave the doctor no history of the injury. He
did not report any injury to his employer. On August 25th,
he made the statement to the insurance adjuster that he did not
know where he got the scratch on the forehead. At the time
of the hearing when he was testifying before the examiner he
said on direct examination that about a week after July 21st,
"I became aware of how I got that injury. I went back over

my route and I thought I might recall where I had gotten it, and one particular spot in my route I recalled I had scratched it, but I never thought anything of it at the time. It couldn't be a week after the 21st of July, not quite that long; maybe about four days, three or four days. I didn't think anything of it at that time." On cross-examination in reply to the question: "Now, are you sure that it was about four days later?" the applicant answered: "Yes."

> Question: "It was within a week?"
> Answer: "I know."
> Question: "You are sure of that?"
> Answer: "Yes."

These positive statements were later shown to be incorrect and his memory as to them defective. Repeated instances of inability to recollect give the right to doubt the correctness of an alleged recollection of a material fact. 3 Wigmore, Evidence (3d ed.), p. 145, sec. 782; p. 635, sec. 995. Here the witness testifies, in substance, on his direct examination to recalling running into a bush and scratching his forehead within a few days after he noticed the scratch. This, he repeats on cross-examination but later, his attention having been called to the statement he had made on August 25th to the insurance adjuster in which he said he did not know how he had hurt himself, he admitted that he was mistaken about recalling the occasion of his injury so soon after the appearance of the scratch. He then says that he did not go over his route for the purpose of trying to recall the incident until after he had had a conference with his attorney. Just when this consultation with the attorney occurred is not definitely stated but it appears from the testimony that it was some time after the statement of August 25th. The doctor testified that he did not remember exactly when he first heard of the claim of injury as now relied on but thought it was sometime in September.

The uncertainty as to when and how he was hurt was in the opinion of the commission the source of a legitimate doubt and there was nothing to dispel that doubt arising from his statements including the one where he says that he had a dog but that the dog did not "scratch me there that I know of." He was a normal boy attending high school spending only a limited period of the day on his route. For several weeks when asked about his hurt his reply amounted to: "I have scratched myself occasionally but don't remember any specific time that I hurt my forehead that might cause the sore there." It is within the range of reasonable probability that he might have sustained the bruise under circumstances not connected with his employment. When the evidence was all in, it appeared that it was not until after his attention had been called to the importance in a legal sense of the question of whether the bruise was incidental to and grew out of his employment that he claimed to have knowledge of when and how he was hurt. The bias of a witness has a well-known and pernicious influence in quickening or deadening the memory of a witness, and much allowance is made therefor in weighing his testimony even though he is of good character. 32 C. J. S. p. 1065, sec. 1026. See also *Glazer v. Woodward* (Tex. Civ. App.), 127 S. W. (2d) 938.

The trial court evidently was of the opinion that the commission acted without considering the testimony. It appears that the examiner's minutes were before the commission and contain a sufficient record. As the learned trial judge in treating with a somewhat similar situation in *Berg v. Industrial Comm.* 236 Wis. 172, 294 N. W. 506, said: "Review of the examiner's notes constitutes 'review of the evidence'" (vol. 2194 of Cases and Briefs, p. 179, of the printed case). On appeal the decision in the *Berg Case* was affirmed. Particularly would this be so when the inconsistencies and bias appear in the record. The commission might well find as it did because of the abundance of opportunity for the sustaining of injury

outside of his employment and his own uncertainty about its source. The difficulty of proof does not dispense with the necessity of proof.

The apparent belief of respondent in the correctness of his guess may not be questioned but he has left a legitimate doubt as to the material fact of how and when his forehead was bruised. The commission is of the opinion that he does not know. His guess may be a likely one. However, if he cannot produce credible testimony that will serve to take his conclusion out of the category of guesses, he has not produced evidence of convincing influence to form a basis for an award in his favor. Where the trier of fact had reason to believe that a witness swore to facts which he did not know or recollect, they were not bound to credit his testimony for the evidence must be sufficient in their judgment to establish the fact upon which respondent's case rested. 2 Elliott, Evidence, p. 213, sec. 953; *Gores v. Graff,* 77 Wis. 174, 46 N. W. 48; *Pelitier v. Chicago, St. P., M. & O. R. Co.* 88 Wis. 521, 60 N. W. 250; *Anderson & Chicago Brass Co.* 127 Wis. 273, 280, 106 N. W. 1077. In the latter case, it is said with reference to the burden of proof: "He may produce a preponderance, that is, he may produce evidence of slightly greater convincing power to the mind than that produced by his opponent, but still his evidence may be weak and leave the mind in doubt. In order to entitle himself to a finding in his favor his evidence must not only be of greater convincing power, but it must be such as to satisfy or convince the minds of the jury of the truth of his contention."

*By the Court.*—Judgment reversed, and cause remanded with directions to confirm the order of the Industrial Commission.