MOLINARO, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*April 6—May 1, 1956.*

For the appellant there was a brief and oral argument by *N. Paley Phillips* of Milwaukee.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

MARTIN, J.  Ann Molinaro was an employee of the Nunn-Bush Shoe Company. At about 2 p. m. on November 25, 1953, while engaged in toe trimming, a form with a shoe weighing between two and two and one-half pounds fell on her right foot.

She testified she did not think anything of it; it did not bother her; she had very little pain. About an hour and a half later she left work. She stated that when she got home "my foot was kind of weak, then later in the night it started to swell up." Later in her testimony she stated, "not until I got home I noticed it [the swelling]."

The next day was Thanksgiving and the shop was closed until the following Monday. During that interval Mrs. Molinaro soaked the foot in hot water three times a day.

Plaintiff returned to work Monday and reported to the personnel director of the company who sent her to the first-aid attendant. She was told to put applications on the foot. She continued to work through Monday and Tuesday and part of Wednesday when someone from the company took her to a doctor.

Dr. Harold H. Ottenstein, who examined the plaintiff and had X rays taken, testified that he found a fracture at the base of the fifth metatarsal bone. This bone, extending from the little toe to the beginning of the heel on the lateral aspect of the foot, was fractured at its base, the point closest to the heel. Having heard the testimony of the plaintiff, the doctor was asked:

"*Q*. And do you have any opinion, based on reasonable medical certainty, as to the likelihood of a causal connection between the claimant's statement as to how the injury occurred and the fracture of the fifth metatarsal bone of her right foot which you discovered upon your examination of her? . . . *A*. My opinion is that there is a remote possibility you could sustain a fracture of the tuberosity by a fall of a shoe with the last in it."

He further testified:

". . . most of these fractures are due to a force being applied in an abnormal direction. In other words, with the foot supinated, or plantar flexed, the way I am showing you here, and in a position which is common among women who

wear high heels, you get a shearing force which rips off the tuberosity at the base of the fifth metatarsal."

Mrs. Molinaro had testified that she had "very little" pain after the shoe fell on her foot and that she went on working for about an hour and a half after that. In Dr. Ottenstein's opinion, a person suffering such a fracture "would know it immediately . . . you would know you had something abnormally painful."

Appellant states the question on this appeal to be: Is there any credible evidence to sustain the finding of the commission that the accident did not produce the fracture which the applicant unquestionably sustained?

The burden was upon appellant to prove that it did. What was her evidence as to the causal connection between the accident and the injury? She stated she had very little pain after the shoe fell on her foot; she mentioned it to no one that day; she noticed some swelling that night; she went to work five days later and reported she had pain; she went to work on the following two days before she insisted that a doctor be consulted.

In Dr. Ottenstein's opinion, a person sustaining a fracture of the fifth metatarsal bone would suffer considerable, even "abnormal," pain immediately; swelling would develop "rapidly" after the injury, within ten to thirty minutes. He stated that patients suffering such a fracture usually consult him the same day because of the pain and usually have a history of twisting the ankle; although it could be caused by the dropping of an anvil or lead pipe on the foot, the common cause is that of a shearing force; that there was a "remote possibility" that Mrs. Molinaro's fracture was caused by the accident she described.

With this evidence in the record the commission could not fairly conclude, simply from her uncorroborated testimony that the shoe fell on her foot and the fact that a week

later a fracture of the fifth metatarsal bone in her foot was found, that the alleged accident caused the fracture. Appellant asserts that there is no evidence whatever that the foot was injured in any other manner. It was not necessary for the respondents to show that some other accident caused the injury. The expert testimony showed, however, that after the falling of the shoe Mrs. Molinaro's symptoms of injury were not such as customarily accompany a fracture of this type and there was but a "remote possibility" that such a fracture could result from the falling of the shoe.

As this court said in *Oscar Mayer & Co. v. Industrial Comm.* (1935), 219 Wis. 474, 477, 263 N. W. 88:

"The Industrial Commission cannot base awards upon possibilities."

While the commission may base its findings on a preponderance of probabilities or of the inferences that may be drawn from established facts, it cannot base them on mere possibilities.

"Mere possibilities leave the solution of an issue of fact in the field of conjecture and speculation to such an extent as to afford no basis for inferences to a reasonable certainty, and in the absence of at least such inferences there is no sufficient basis for a finding of fact. It will not do to reach a conclusion in favor of the party on whom the burden of proof rests by merely theorizing and conjecturing. There must at least be sufficient evidence to remove the question from the realm of conjecture." *Creamery Package Mfg. Co. v. Industrial Comm.* (1933), 211 Wis. 326, 330, 248 N. W. 140. See also *Loomis v. Industrial Comm.* (1934), 216 Wis. 202, 256 N. W. 693.

This court has said:

"The decision of the Industrial Commission disallowing a claim is not to be disturbed when the evidence warrants doubt that the condition causing the disability arose out of

the employment." *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 337, 12 N. W. (2d) 42.

Dr. Ottenstein's testimony warranted such a doubt. On the other hand, the commission was not required to believe the plaintiff's testimony that she sustained the injury at work and that she had no other accident to her foot. The commission is the sole judge of the credibility of witnesses. *Hemans v. Industrial Comm.* (1954), 266 Wis. 100, 62 N. W. (2d) 406; *Keller v. Industrial Comm.* (1955), 271 Wis. 225, 72 N. W. (2d) 740.

The lower court properly confirmed the order of the commission dismissing the application for compensation.

*By the Court.*—Judgment affirmed.

FAIRCHILD, C. J., took no part.