TUOHY, Appellant, v. INDUSTRIAL COMMISSION and others, Respondents.

*November 7—December 2, 1958.*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and *Eckert & Caldwell* of Woodstock, Illinois, and oral argument by *Eugene O. Gehl* of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents Daggett and the American Automobile Insurance Company there was a brief by *Bendinger, Hayes & Kluwin* and *G. J. Harrington,* all of Milwaukee, and oral argument by *John A. Kluwin.*

MARTIN, C. J. In September, 1954, appellant went into a hospital complaining of difficulty in eating and epigastric distress. Diagnosis of hypertrophic gastritis was made; he had an abnormal electrocardiogram. After two months' vacation in Arizona he returned to work and, he testified, had no more trouble with his health. In December, 1954, he started working for John Daggett as a laborer in the construction of houses.

On February 23, 1955, while in the course of his employment, appellant sustained an injury to his chest when he slipped and fell on some tools he was carrying. He was "knocked out" and when he "came to" he was cold, wet, and had a terrible pain in his chest. He crawled to his truck and drove home with great difficulty. Since the local doctor had the day off, appellant visited a chiropractor who taped his chest. Pain increased during the night and in the morning he called a doctor and went to a hospital.

X rays were taken which showed the fracture of five ribs on the left side, which fractures were in good position and there was no evidence of intrathoracic injury. The X rays also showed that Tuohy's heart was enlarged 50 per cent on February 24th and 15 per cent four days later. Tuohy was discharged from the hospital on March 4, 1955, his condition being described as "good."

On March 13th he was hospitalized with chest pain and symptoms of a coronary occlusion. An electrocardiogram dated March 21, 1955, recites, "Recent posterior wall infarct with lateral wall ischemia." He was confined to the hospital for ten days.

On May 15th he was again hospitalized, and on June 6, 1955, he suffered a stroke resulting from his heart condition and he has been paralyzed since.

Tuohy was awarded compensation amounting to $609 for temporary disability suffered as the result of his injury of February 23, 1955, that sum having been paid in full by June 5, 1955. On March 3, 1956, he made claim for additional compensation for temporary total and permanent disability. The Industrial Commission found:

"That as a result of his accidental injury of February 23, 1955, applicant suffered some temporary disability for which he has been adequately and properly compensated by the payment of compensation in the sum of $609; that any additional disability which the applicant may have suffered

is not attributable to said injury, but is due to other causes wholly unrelated thereto."

The commission ordered the application dismissed.

Dr. Samuel Rosenthal, an expert witness for the claimant, testified, on the basis of Tuohy's hospital and medical reports, that in his opinion the blow to the chest on February 23, 1955, produced a coronary thrombosis which occurred four to six hours after the injury; that there resulted additional recurrent thrombosis finally resulting in a cerebral embolism and an embolism to the left leg. In arriving at his opinion, Dr. Rosenthal considered the X-ray reports of Tuohy's hospitalization which began February 24, 1955, showing enlargement of the heart, the laboratory tests showing a white blood cell count of 15,800, the nurses' notes showing Tuohy was short of breath and "color seems slightly cyanotic," the administering of oxygen, the giving of narcotics for severe chest pain for four days, and the X rays of the ribs. In his opinion, the uncomplicated fracture of five ribs, as shown by the X rays, would not produce the enlargement of the heart, the elevated blood count, the pain and shortness of breath; that the clinical findings were indicative of an acute myocardial infarction which was the result of the trauma to the chest, and that Tuohy's unusual physical and emotional strain in removing himself from the place of injury was also a causative factor.

This evidence, appellant contends, is sufficient to sustain findings entitling him to additional compensation benefits. On oral argument he maintained he had met his burden of proving there was a causal relationship between the accident of February 23, 1955, and the coronary condition and paralysis. There is no doubt that the testimony on behalf of the appellant adduced at the hearing before the examiner would entitle him to an award had there been no contradictory testimony.

Dr. Mischa J. Lustok, who qualified as an expert for the respondents, testified, likewise from the records, that in his opinion there was no cause-and-effect relationship between the chest injury and the coronary condition. The broad basis for his conclusion he stated as follows:

"The relationship between chest injury and coronary occlusion is not a close one. In fact, a rather argumentative one. There is a relationship between chest injury and injury to heart muscle, but the relationship of chest injury to coronary occlusion is very much in doubt."

He further testified:

"Granted that there may be injury to the heart by a blow to the chest, the heart is a meaty organ consisting of a considerable amount of bulk with vessels no bigger, and smaller than an ordinary pencil transversing through it. It would be somewhat unreasonable to expect a contusion to such a beefy organ to select the site of one of these tiny vessels that is imbedded in it without injuring the major portion of the organ too. That is the main basis for disbelieving that there is such a thing as traumatic coronary heart disease. There are other forms of heart disease but not traumatic coronary heart disease."

The rule is that where, as here, disputed medical testimony raises a question of fact, the findings of the commission are conclusive. *Giant Grip Mfg. Co. v. Industrial Comm.* (1956), 271 Wis. 583, 74 N. W. (2d) 182.

Appellant's position is that such rule requires that the evidence which supports the findings shall be substantial evidence and that the testimony of Dr. Lustok does not constitute such evidence because it did not have a proper foundation; citing *McGaw v. Wassmann* (1953), 263 Wis. 486, at page 492, 57 N. W. (2d) 920, and *Will of McGovern* (1942), 241 Wis. 99, at page 107, 3 N. W. (2d) 717. In support of this contention appellant attacks the testimony of respondents' expert in several respects.

Dr. Lustok testified (and stated in his written report of October 1, 1955, introduced in evidence) that in order to establish a cause-and-effect relationship between chest injury and coronary heart disease two clinical criteria must be met,—(1) that the coronary heart attack occur immediately or shortly after the injury, and (2) that there be definite evidence of no pre-existing heart disease,—further qualifying that statement in that even when these two prerequisites are met, the injury to the chest must be so extreme as to produce hemorrhage into the heart wall muscle or the heart sac. He stated, "The development of a blood clot within a coronary artery which is what causes coronary occlusion is an extremely remote possibility under such circumstances."

As to the first of the two prerequisites mentioned, Dr. Lustok testified that during the ten days Tuohy was hospitalized after the chest injury there was no diagnosis of coronary disease and no evidence that might make one suspect such disease, even though extensive studies were made. Appellant maintains that this is contrary to the evidence of the X rays which showed a 50 per cent enlargement of the heart on February 24th and a 15 per cent enlargement on March 1st. In cross-examination on this point Dr. Lustok testified that measurements taken by X ray are inaccurate, and that enlargement of the heart might be caused by a number of conditions which X ray would not disclose. Further, he testified that heart enlargement from traumatic injury to the heart takes months and sometimes years to produce, and Tuohy's enlargement showed up when he entered the hospital the day after his injury. He testified that the enlargement indicated that "there has been heart disease present."

In cross-examination as to the cyanosis noted in the nurses' records, Dr. Lustok testified cyanosis is very difficult to determine by looking at a person, but assuming that Tuohy had cyanosis, that condition could be due to any one of many conditions which could cause interference with exchange of

oxygen through the lung fields. He testified that "certainly a man with five rib fractures would have impairment of ventilation" because of the difficulty in taking a deep breath because of pain, and because his ribs would not quite function as they should.

As to the severity of the pain for which Tuohy was given narcotics for four days, Dr. Lustok testified that demerol, the drug he was given, is one of the weakest narcotic drugs and has no more pain-killing power than an empirin; that morphine should not be given to a patient with fractured ribs because it depresses respiration, but that morphine would be a much more-desirable drug to give a patient with a coronary condition.

With respect to the prerequisite of no pre-existing heart disease, Dr. Lustok testified the records of Tuohy's hospitalization in September of 1954, prior to the injury, showed that he had symptoms "which certainly could have been symptoms of coronary insufficiency" at that time. On cross-examination he testified that the enlargement of the heart shown on the February 24, 1955, X ray was "supporting evidence that serious heart disease has been present for a long time prior to the time that the ribs were fractured."

Tuohy had entered the hospital in September, 1954, his complaint being acute gastric distress with difficulty in eating and epigastric distress. The electrocardiogram of September 13, 1954, gives this impression:

"Probable incomplete right bundle branch block although the diagnostic RR′ is not identified because of the lack of a right precordial chest lead."

Dr. Lustok testified that Tuohy's symptoms of gastric distress, as well as the abnormal electrocardiogram, were evidence sufficient to suspect coronary insufficiency. Appellant contends that he completely disregarded the diagnosis of hypertrophic gastritis and the evidence for such diagnosis.

A reading of Dr. Lustok's testimony shows that he did not ignore or disagree with the diagnosis which was made but considered that it did not fully explain Tuohy's symptoms.

Thus, it appears from the record, as well as from the admission of appellant's counsel on oral argument, that all the factors which formed the foundation for Dr. Rosenthal's opinion were considered by Dr. Lustok and interpreted otherwise. Dr. Lustok's attention was called to all the facts which appellant contends he failed to consider. He did consider them, and his opinion remained unchanged,—that there was no causal relationship between the chest injury of February 23, 1955, and Tuohy's present coronary condition.

It was appellant's burden to prove all facts essential to compensation to establish that the injury caused the disability. *Molinaro v. Industrial Comm.* (1956), 273 Wis. 129, 76 N. W. (2d) 547. As stated above, he would have met that burden had there been no medical testimony contrary to that of Dr. Rosenthal. Since Dr. Lustok's testimony disputed that of appellant's expert, and it was neither incredible nor inherently unreasonable, it was at least sufficient to raise a legitimate doubt in the minds of the commission as to the existence of facts essential to compensation; and where the evidence raises such a doubt it is the commission's duty to deny compensation. *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 12 N. W. (2d) 42.

*By the Court.*—Judgment affirmed.

BROWN and FAIRCHILD, JJ., took no part.