SOPER, Appellant, v. INDUSTRIAL COMMISSION and another, Respondents.

*November 7—December 2, 1958.*

For the appellant there was a brief by *Frank L. Morrow* of Eau Claire, and *White, Davison & White* of River Falls, and oral argument by *James E. Garvey* of Eau Claire.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan*, assistant attorney general, and oral argument by *Mr. Levitan*.

WINGERT, J. 1. *Intervening injury.* Credible evidence in the record sustains the commission's finding that the condition of plaintiff's left knee for which he was operated on was not the result of the injury he suffered on September 29, 1954, but was due to intervening injury which occurred in February, 1955.

Dr. Kampine testified that on February 15, 1955, plaintiff came in complaining of his left knee, and said he had slipped on the ice at a filling station which he owned. Plaintiff first denied having had any accident since September 29th, but

later admitted that on or about February 15th while walking to an outdoor toilet at the filling station he got about half way there when his left knee "buckled and I caught myself on my hands and knees." He later denied that his knees struck the ground, saying that "I laid down on my two hands" and that he had no mark or bruise on his left knee.

Dr. Kampine, a general practitioner, had treated plaintiff at frequent intervals from the time of the September 29th accident. He testified that in the first accident applicant received minor contusions of the left knee which did not bother him much. While X rays were taken of other parts of his body, none was immediately taken of the left knee. On October 15th, because applicant complained of some pain in the left knee, an X ray was taken which showed a condition of osteochondritis dissecans (disintegration of cartilage), which the doctor thought had been several years in developing and had not been aggravated by the injury. At that time the doctor did not think the plaintiff had an injured cartilage. The doctor continued to see applicant from time to time. When on February 15th plaintiff came in complaining again of his left knee and saying he had slipped on the ice at his filling station, the doctor felt certain that he had then torn an internal cartilage in the left knee. The doctor strapped it with adhesive tape and plaintiff was able to walk quite well. The doctor gave it as his opinion that the cartilage condition was caused by the accident when plaintiff slipped at the filling station on February 15th, and not by that of September 29th.

While Dr. Lerner, who removed the cartilage in April, 1955, expressed the opinion that the torn cartilage and aggravation of the osteochondritis dissecans resulted from a violent trauma, to wit, the September 29th accident, it may be inferred from the evidence that plaintiff did not tell Dr. Lerner about his February accident. Plaintiff was also examined by Dr. Jones of Wausau, whose report contains the following statement: "When asked whether he had any other

injuries [than that of September 29th] or not the patient stated he had not. He was very emphatic about this."

Dr. Kampine's testimony supports the commission's finding. As between Dr. Kampine and the other experts and plaintiff himself, it was for the commission to determine which to believe.

Plaintiff attacks Dr. Kampine's testimony as inherently incredible, and points out that on some points the doctor was uncertain and testified from memory rather than from his records, that he made a mistake of one day in the date of the accident, that he first stated that he did not take an X ray on October 15th and immediately corrected his statement by saying that he did take an X ray on that date, and that he answered questions in which the respondent's attorney mistakenly referred to the plaintiff as Mr. Smyth, without commenting on the misnomer. We do not think these weaknesses necessarily rendered Dr. Kampine's testimony incredible. The commission is the judge of credibility. *Molinaro v. Industrial Comm.* 273 Wis. 129, 132, 76 N. W. (2d) 547. The testimony in question left much to be desired with respect to definiteness and certainty, but the doctor was quite positive on the crucial points, and it was for the commission to decide whether his testimony outweighed the contrary evidence of the other doctors. *Sheehan v. Industrial Comm.* 272 Wis. 595, 601, 76 N. W. (2d) 343; *Schuh v. Industrial Comm.* 2 Wis. (2d) 611, 87 N. W. (2d) 256. The opinions of Drs. Lerner and Jones were made much less persuasive by plaintiff's failure to apprise those experts of his February accident. *Pressed Steel Tank Co. v. Industrial Comm.* 255 Wis. 333, 335, 38 N. W. (2d) 354.

After all, plaintiff had the burden of convincing the Industrial Commission, and its finding against him is not to be disturbed when the evidence warrants a legitimate and substantial doubt that the facts essential to compensation existed.

*Johnston v. Industrial Comm.* 3 Wis. (2d) 173, 179, 87 N. W. (2d) 822; *Beem v. Industrial Comm.* 244 Wis. 334, 337, 12 N. W. (2d) 42. Here a study of the record leaves us with such a doubt.

Since the finding that the injury for which plaintiff was treated in April was not the result of the September 29th accident must be affirmed, it is unnecessary to review the finding that no notice of the treatment received in Minneapolis was given to the respondent or its insurance carrier.

2. *Duration of compensable disability.* Plaintiff challenges the finding that "the compensation heretofore paid the applicant fully compensates him for temporary disability resulting from the injury of September 29, 1954," on the ground that it is contrary to the undisputed evidence. The commission's brief does not deal with the point.

The record indicates that plaintiff was paid compensation for disability to December 20, 1954. From that date to January 20, 1955, he worked for another employer. On January 20th he quit because of trouble with his left knee. There is no evidence that he worked again prior to the operation in April. In his application for compensation filed September 5, 1955, plaintiff claimed disability from January 20, 1955, to date of filing. The insurance company's answer admitted such disability from January 20 to March 29, 1955.

While the record is not very specific on the subject, and nobody appears to have paid much attention to it at the hearings, there was evidence of some disability after January 20th that presumably resulted from the September accident. In view of the insurance company's admission of disability to March 29th, and the absence of any attempt by the commission in this court to support the finding that plaintiff had been fully compensated for disability resulting from the September injury, we think the case should go back to the commission for the sole purpose of determining to what,

if any, compensation plaintiff is entitled for disability between January 20 and March 29, 1955, resulting from the injury of September 29, 1954.

*By the Court.*—Judgment reversed, with directions to set aside the order of the Industrial Commission and remand the case to the commission for further proceedings consistent with this opinion.

BROWN and FAIRCHILD, JJ., took no part.