Fitz, Appellant, v. Industrial Commission and others, Respondents.

*March 11—April 5, 1960.*

For the appellant there was a brief by *Brown & Winter* of Madison, and oral argument by *Jay W. Winter*.

For the respondent Industrial Commission the cause was argued by *Mortimer Levitan,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondents C. R. Meyer & Sons Company and Employers' Liability Assurance Corporation there was a brief and oral argument by *Edward T. O'Neill* of Fond du Lac.

HALLOWS, J.  The first question is whether there is any credible evidence to sustain the finding of the Industrial Commission that the condition of the appellant's femoral arteries as found in 1956 was not caused by, aggravated by, or related to his injury of May 21, 1952.

There is no dispute as to the applicable principles of law. If the medical testimony was in conflict, the weight thereof and the credibility of the witnesses were for the commission to determine. *Unruh v. Industrial Comm.*

(1959), 8 Wis. (2d) 394, 99 N. W. (2d) 182; *Tuohy v. Industrial Comm.* (1958), 5 Wis. (2d) 576, 93 N. W. (2d) 344; *Polzin v. Industrial Comm.* (1958), 4 Wis. (2d) 600, 91 N. W. (2d) 109; *Molinaro v. Industrial Comm.* (1956), 273 Wis. 129, 76 N. W. (2d) 547; *Milwaukee E. R. & T. Co. v. Industrial Comm.* (1951), 258 Wis. 466, 46 N. W. (2d) 198.

If the evidence is sufficient to raise in the mind of the commission a legitimate doubt as to the existence of facts necessary and essential to establish a claim for compensation, it is the duty of the commission to deny compensation. This is another way of saying that the claimant has the burden of proof which he has not sustained. *Johnston v. Industrial Comm.* (1958), 3 Wis. (2d) 173, 87 N. W. (2d) 822; *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 12 N. W. (2d) 42. The causal relationship between an injury and the disability presents a fact question for the commission. *Unruh v. Industrial Comm., supra; Tuohy v. Industrial Comm., supra; Melli v. Industrial Comm.* (1956), 274 Wis. 76, 79 N. W. (2d) 225. Unless the commission's finding is clearly against all the credible testimony, or is so inherently unreasonable in itself as not to be entitled to any weight, the finding of the commission on questions of fact is final. *Unruh v. Industrial Comm., supra; Tuohy v. Industrial Comm., supra; Soper v. Industrial Comm.* (1958), 5 Wis. (2d) 570, 93 N. W. (2d) 329; *Borden Co. v. Industrial Comm.* (1958), 2 Wis. (2d) 619, 87 N. W. (2d) 261; *Schuh v. Industrial Comm.* (1958), 2 Wis. (2d) 611, 87 N. W. (2d) 256.

The appellant first argues that there is sufficient credible testimony to support his contention that the condition in his thighs was caused by trauma and not disease. This may or may not be true, but it is immaterial. As this court said in *Unruh v. Industrial Comm., supra* (p. 398): "The

question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make."

The second argument is that the findings are not supported by any medical testimony because the respondent's medical experts based their opinions on erroneous assumptions of fact, *i.e.,* no injury above the knees, pathological report that arteriosclerosis was present, lack of symptoms, and a history of hypertension. There was evidence, which the commission could deem credible, that the accident caused only slight injury to the right leg below the knee and no injury to the left leg. Dr. Backus, the attending physician on the day of the accident, found no injury to the left leg and a bruise on the lower right leg below the knee. There was no subcutaneous bleeding in either leg resulting in discoloration. The appellant told Dr. Reichardt in 1953 that the timber hit only his right leg. The foreman who lifted the timber off the appellant testified it rested across both lower legs. The appellant returned to his construction job in July, 1952, and worked at various heavy jobs, operated his farm and cranberry bog until the middle of 1956, and went deer and bird hunting in 1952, 1953, and 1955. The appellant did not complain of his legs to the insurance carrier's adjuster in January, 1953, or to Dr. Reichardt who examined him in April of 1953, although he did complain of soreness in the right leg below the knee. In 1953 when the appellant entered into a stipulation on which the award was entered, no mention was made of the condition of his legs except the sprain of the right ankle. On August 25, 1956, the appellant wrote a letter to the defendant compensation carrier, stating his legs had been giving him trouble during the past year. This was the first notice given to the insurance carrier. The

consensus of the medical testimony on behalf of the respondent was that the appellant's condition was the result of arteriosclerosis obliterans or disease and in order for the injury of 1952 to cause arteriosclerosis in the appellant's legs the injury would have to have been to the thighs and serious enough to compress the arteries, causing hematoma, and to produce symptoms, and the symptoms would have shown up within a few weeks.

The appellant produced seven witnesses, including his sister-in-law, brother-in-law, and co-workers, who testified that his legs were black and blue, green, and other colors shortly after the accident. There was also a conflict in the testimony of just how the heavy timber struck the appellant. Various versions were given by the appellant on some eight different occasions from the time of the accident to the hearings six years later. The testimony of fellow employees, while tending to show the timber struck or laid across the appellant's upper thighs, was not consistent. The appellant claimed his legs bothered him as early as 1953, but such complaints were not made known to doctors or to the respondents until 1956. The Industrial Commission, as the fact finder, could believe, as stated by the assistant attorney general in his brief, that, "The details of the accident became hyperbolized with the passage of time."

The appellant's witness, Dr. Young, who operated on him, testified that trauma caused the occlusion of his arteries, and not disease. Dr. Sims, an internist, testified likewise in answer to a hypothetical question. Dr. Young's opinion was based on his direct observation during surgery of the character of the vessel wall after the occluding substance was removed, on the absence of fatty deposits in or around the occluding substance, on the appearance of the substance forming the occlusion, and on its composition. There was medical testimony that the operating surgeon

was in error because the condition of the appellant's legs in 1956 could not be determined to be a result of trauma by direct or close observation during surgery, that the absence of fatty deposits could not be observed, that microscopic examination would show such deposits because they are not present except microscopically in the early stages of the disease. Dr. Sullivan, a vascular surgeon, and Dr. Becker testified that the condition of the appellant's legs in 1956 was the result of arteriosclerosis obliterans or disease, and not caused by trauma or injury. There was other conflicting medical testimony concerning the report of the pathologist and the history of hypertension. It was the duty of the trier of the facts to determine first the nature of the injury and its extent and then to evaluate and resolve the conflict of the medical testimony and opinions on the basis of its findings of the nature and extent of the injury and all other facts underlying such medical opinions. Where medical testimony is offered upon facts supported by credible evidence, such testimony may not be disregarded merely because the facts upon which it is predicated were in dispute, but may if such medical opinion is based on facts found by the commission not to exist or not supported by credible evidence.

The second question raised by the appellant is that the commission acted without and in excess of its power because four different examiners conducted the four hearings. The findings of the examiners were signed by all four. While a judge may not render a judgment when he has not seen and heard the witnesses, *Cram v. Bach* (1957), 1 Wis. (2d) 378, 83 N. W. (2d) 877, 85 N. W. (2d) 673, this rule has not been applied to the Industrial Commission and its administrative hearings by examiners. While it would be better practice to have the one examiner conduct all the hearings involving the same question of fact, it is not

error for different examiners to conduct the hearings if all agree on the resulting findings and order. Nor does the Industrial Commission need to hear and see all the witnesses, but may review the examiners' findings by a consideration of the record or the transcript of the testimony or of an adequate synopsis of the testimony prepared by the examiners. *Matayo v. Industrial Comm.* (1958), 5 Wis. (2d) 401, 92 N. W. (2d) 743; *Berg v. Industrial Comm.* (1940), 236 Wis. 172, 294 N. W. 506. It is not the examiners' findings and order which are appealed from, but the Industrial Commission's findings and order, and when the Industrial Commission adopts the findings and order of its examiners who jointly made them, such findings and order become those of the commission. *State ex rel. Madison Airport Co. v. Wrabetz* (1939), 231 Wis. 147, 285 N. W. 504.

*By the Court.*—Judgment affirmed.