MOORE, Special Administratrix, and another, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.

*December 2, 1960—January 10, 1961.*

For the appellants there was a brief by *Baumblatt & Goodman* of Racine, and oral argument by *Leonard P. Baumblatt.*

For the respondent Industrial Commission the cause was argued by *Mortimer Levitan,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

DIETERICH, J.   The applicant, Willard James Moore, died from complications of tuberculosis on April 16, 1956. The commission considered not only the application of his administratrix, but also the claim of his widow, now the plaintiff, Mrs. Edith Moore Graham, for death benefits.

Moore was employed at the Southern Colony on June 21, 1954. The record does disclose that pre-employment X rays were taken June 21, 1954, but were never produced either because the films were lost or they were bad films (unreadable), and it is conceded that Moore would not have been

hired had his physical examination shown any evidence of active tuberculosis.

The record discloses that the newly discovered evidence introduced at the second hearing consisted of army medical records, X rays taken while Moore was in the United States military service from July 16, 1943, to September 20, 1943, and medical reports.

Dr. Francis B. Landis of the Veterans Administration Hospital at Wood, Wisconsin, was called as a witness and he brought with him the hospital records of Mr. Moore. Included among them were X rays of Moore taken on September 20, 1943, at Fort Riley, Kansas, and an X ray of Moore's chest taken on July 16, 1943, taken at the Armed Forces induction station. Dr. Landis testified that both of these films had been reviewed by Dr. Roger A. Hemphill, formerly chief of tuberculosis at the Veterans Administration Hospital at Wood, Wisconsin, and that Dr. Hemphill's interpretation of both films was negative. Dr. Landis, an internist in the employ of Veterans Administration Hospital at Wood, did not claim to be an authority in the field of tuberculosis and testified that in his opinion the films showed no conclusive evidence of prior tuberculosis. Under cross-examination he testified that the two films in question showed no evidence of existing or prior tuberculosis.

The plaintiffs also introduced a report from Dr. O. A. Sander dated February 5, 1944, which report indicated that the decedent, Willard James Moore, exhibited no evidence of tuberculosis at that time.

The defendants in rebuttal called Dr. Norbert Enzer, a recognized expert in the field of tuberculosis and he in effect reiterated his opinion that there was no relationship between Moore's employment at the Southern Colony and the beginning and development of his tuberculosis. In fact his words were as follows: "I will say pretty much what

I said about this at the last hearing; that I think this film showed evidence of what we would call a primary infection . . ." He testified that the film taken September 20, 1943, showed evidence of a primary type of tuberculosis, as indicated by the abnormal shadows and nodules (a small aggregation of cells) in the left chest indicating an inactive type of lesion, which would indicate he was infected at the time or prior to that time. The films of 1954, beginning with October 13, indicate ulcerated fibrotic tuberculosis of a post-primary type, and that the tuberculosis he now has is not his first infection. He further testified that the extent of the involvement at this time indicates a process of much-longer duration than that which could be considered during the time of his employment and that the 12 periods of exposure at Southern Colony is too narrow a zone to consider, that the exposure occurred three or four weeks after his employment, which was either the 15th of July or the 20th of July, 1954, and further that the lesions which were produced could not be realized in such a short time, that is October 13, 1954, and could not develop a bilateral ulcerated fibrotic type of tuberculosis in that length of time.

Dr. Enzer admitted that the X rays taken on June 21, 1954, should have demonstrated lesions in the applicant's lungs, but he had not examined these films, that the tuberculosis shown on October 13, 1954, could have developed from already-acquired tuberculosis, even though the X ray did not reveal it, and in response to the following question: "How do you account for the fact that apparently this man never had any complaints from 1943 down to the time he went to the doctor in October of '54?" testified: "Well, that is in the very nature of the beast—tuberculosis. That is what makes it such a dangerous disease. That is why we have a constant tuberculosis-prevention program, because patients may have very active and even very advanced lesions, and walk about, and work, and have no significant symptoms,

and go undetected. That is why periodic X-ray examination of the chest is the answer to the prevention and spread of tuberculosis."

Dr. Enzer further testified at the first hearing:

". . . I did not say the condition had existed since 1943. I said the X-ray film of 1943 indicates that he was infected at that time. The condition as we recognize it now was obviously not present at that time. When that began I can't say. On the basis of my knowledge of pathology and the nature of tuberculosis, I would be inclined to say that he had an active pathological process in the upper lobes of his lungs for several months prior to October 13th."

Dr. Enzer in his redirect examination at the second hearing testified:

"Well, when one finds the kind of lesion that this man had which was very far advanced tuberculosis when it was read in October of 1954, October 13, 1954, I interpreted those films as bilateral massive tuberculosis and since the problem was for me to render an opinion as to whether or not the circumstances of employment in this case were an influencing factor in the development of that tuberculosis, I was notably interested in how far back one could establish any evidence of primary infection. The logical film that should have been available and helpful was the one about which there is a record, but no film, because the record indicates that a film was taken as a pre-employment examination at the Southern Colony just prior to or in the early part of June of 1954. You have then the situation of not much over two months, certainly not much over three months, before this man became ill with what we now know was tuberculosis. The massiveness of the lesion bilateral extent impressed me as having been a process of longer duration than the period of employment warranted. In the absence of the pre-employment film of 1954, the only other thing we had was this film marked Exhibit B [X ray taken at Fort Riley September 20, 1943]. The only significant thing in that film in my judgment is that in the left upper lobe and in the left hilar area, I think there are changes to indicate that in that part

of the lung, there had been a primary complex infection, long burned out, and the only significance of that is that this man had been infected with a tubercle bacilli. He did not have tuberculosis, certainly not, and I would have been very much surprised if the tubercular test had been done on this man would have been anything but positive. Now, that was the only significance of that film. It was in going backwards that I felt I could relate my new changes in the left upper lobe to the area of the most-advanced tuberculosis which was also the left upper lobe while the right upper lobe was less and I think that is the only significance of that. . . . the pattern of this pulmonary tuberculosis was not the pattern of what we call a progressive primary infection which generally takes the form if they are that malignant of a tuberculous pneumonia. This had all of the characteristics of a secondary type of infection. They are one of those things that are really immaterial in my opinion and interpretation because the length of exposure and the number of times which the record indicated that this man had possible contact with sources of tuberculosis were too short and too infrequent to have produced in so short a time such a malignant progressive disease and I think that the extent of the tuberculosis as recognized in October of 1954, was out of keeping with the circumstances of employment."

The plaintiffs had the burden of proving whether the tuberculosis was either caused or aggravated by Moore's employment at Southern Colony during the period of June 21, 1954, to October 5, 1954. At the second hearing the plaintiffs failed to produce any additional testimony in this respect. There is still a *bona fide* dispute on the record as to whether or not Moore was suffering from an inactive or quiescent case of tuberculosis at the times he was X-rayed in 1943. Dr. Enzer thinks he was. Dr. Landis finally concluded that he was not. Drs. Sander and Hemphill both stated that there was no evidence of active tuberculosis at that time.

The record fails to disclose what the physical condition was or what happened between 1943 and June 21, 1954, at which time Moore was again X-rayed. The record in this

case is finally resolved in a dispute resulting from the medical testimony. Dr. Schultz, Moore's physician, testified that the tubercular condition could have developed or been aggravated or reinfected as a result of his work at Southern Colony. Dr. Enzer testified to the contrary.

The rule is that where, as here, disputed medical testimony raises a question of fact, the findings of the commission are conclusive. *Tuohy v. Industrial Comm.* (1958), 5 Wis. (2d) 576, 93 N. W. (2d) 344.

This court has also stated in *Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 205, 102 N. W. (2d) 93:

> "If the evidence is sufficient to raise in the mind of the commission a legitimate doubt as to the existence of facts necessary and essential to establish a claim for compensation, it is the duty of the commission to deny compensation."

The plaintiffs contend that the commission's conclusion, that because of the widespread, massive tuberculosis involving both lungs, has no basis in fact in view of the testimony of Dr. Schultz and Dr. Enzer to the effect that Moore's condition could have developed or could have been aggravated during the period of his exposure at Southern Colony. Dr. Enzer, however, qualified his statement in that he said, "I think it developed from already-acquired tuberculosis, even though an X-ray film did not reveal it."

It is further contended by the plaintiffs that the testimony that he would not have been employed had the X ray taken at the time of his employment shown tuberculosis amounts to a judicial admission and not a mere inference. However, a study of the record leads us to conclude that there was sufficient evidence to raise in the mind of the commission a legitimate doubt as to the existence of facts necessary and essential to establish the plaintiff's claim that the tuberculosis had its origin or was aggravated by his employment at Southern Colony.

The relationship between the employment and the disease presented a question of fact for the commission, and there being credible evidence to sustain the findings of the commission, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.