ENGSTROM, by GUARDIAN *ad litem*, Appellant, v. DEWITZ and another, Respondents.

*November 28, 1962—January 8, 1963.*

For the appellant there was a brief by *Robert R. Gavic* of Spring Valley, and *C. L. Gaylord* of River Falls, and oral argument by *Mr. Gavic*.

For the respondents there was a brief by *Gwin & Fetzner* of Hudson, and oral argument by *John W. Fetzner*.

FAIRCHILD, J. At the trial, in November, 1961, it appeared that Marion had an abnormality of the eighth dorsal vertebra, with a free fragment of bone. There was expert testimony that this abnormality would produce pain, and

was permanent. The jury must have included this condition in its award. The circuit court set the verdict aside because it concluded that there was no proof that the accident caused the condition.

The accident occurred April 2, 1960. Marion, aged sixteen, was a passenger in the rear seat of her father's car. It was westbound, traveling 40–50 miles per hour, and collided with the eastbound Ness car, traveling about ten miles per hour at the time of impact.

Marion was not hospitalized. Dr. Haskins, the treating physician, described her injuries as "contusions or bruises, very severe, over the left anterior pelvic region, a whiplash injury of the neck, a contusion of the left wrist." Dr. Haskins saw Marion six times after the accident, the last being May 27th. She continued to complain of pain in the neck region and between the shoulder blades, and, later, of pain below that, in the middle of the back. She was given deep-heat treatments, told to limit activities at home, and apply heat and massage. He found tenderness and muscle spasm on several visits. On May 27th, she complained of mild aching in the lower thoracic spine area, but he found no muscle spasm; she had full range of motion; and he discharged her from his care.

Marion testified that she continued to have back pain down to the time of trial. She had difficulty going to sleep. She was in nurse's training, and her back bothered her when sitting in class. She had to be on her feet a great deal and by evening could not sit at her desk to study. Lifting bothered her. Before the accident she had helped her father with milking and had driven the tractor. Since the accident she had pain after being on the tractor for a while and did not milk because she could not lift the pails. She took aspirin and used a heating pad.

Marion testified that she had no back pain before the accident and had never been in an accident or been injured.

Dr. Frank Babb is an orthopedic surgeon. He examined her November 30, 1960. He found no limitation of motion or other significant evidence except "some tightness of the muscular structures in her back" and difficulty in bending forward while sitting on the table with her legs extended in front of her. An X ray, taken at that time, showed an irregularity in the upper corner of the eighth dorsal vertebra. There was a separate fragment of bone which, in Dr. Babb's opinion, represented a fracture. He believed that the same condition was shown on the X ray taken shortly after the accident, although partly obscured by the lung field.

During direct examination, the following took place:

"*Q.* And now, Doctor, I will ask you to assume a hypothetical person who on April 2d, 1960, was sixteen years of age, and prior to April 2d, 1960, she had never experienced any difficulty in bending or lifting, pain while sleeping or sitting. . . .

"Mr. Fetzner: I am going to object to the further use of any hypothetical question or statement by Mr. Gavic. There has been testimony here as to the, supposedly the permanency, the possible treatment that is needed. It is cumulative and repetitious and no probative value.

"Mr. Gavic: I am trying to show causal relationship.

"The Court: For that purpose you may proceed.

"Mr. Fetzner: May I go into chambers, Your Honor?

"The Court: You may.

"(The Court and counsel retire to chambers and then return to courtroom.)

"Mr. Gavic: I think, then, Your Honor, the record should show by agreement of counsel we have agreed to shorten the question and agreed on the type of question to be asked.

"The Court: It may so show.

"*Q.* There is evidence in this case Marion Engstrom was injured in an automobile accident. Do you have an opinion whether the injury you ascertained to be present in her back when you examined her was caused by this auto accident, or by an auto accident, I will say? *A.* I have an opinion.

"*Q.* Will you state that opinion? *A.* It would be my opinion that what I observed and diagnosed in her back was caused by an accident.

"*Q.* But, of course, you don't know whether it was this auto accident. *A.* That is correct.

"*Q.* I have no further questions, Doctor."

On cross-examination, Dr. Babb stated that ordinary bending or lifting would not produce the condition; that riding a tractor might cause changes in several vertebrae, but that it was inconceivable that it could result in this type of injury to only one vertebra. He testified further:

"*Q.* This irregularity, as you termed it, isn't it possible, Doctor, this could have been present prior to the time of this auto accident? *A.* Yes, sir, that is possible.

"*Q.* So your statement and your opinions would be based on a possibility that this could occur as the result of the accident, right? *A.* Counsel, I don't believe I testified that this was the result of the accident. I believe my testimony was that it was the result of 'a' accident.

"*Q.* I see. I was going to get to that. So, actually, it would be difficult to tell, would it not, Doctor, as to whether or not this irregularity you spoke of was a direct result of this auto accident in which she was involved and which we are here about today? *A.* This is why it is difficult and this is why it is important to inquire of the patient as to the presence or absence of symptoms before a certain incident as opposed to after a certain incident, and I did so carefully inquire and I was informed and assured on several occasions by the patient that she had absolutely no backache prior to the accident in question. Therefore, I would reasonably assume that it must have been as the result of that accident, but this is an assumption.

"*Q.* It is an assumption and that would be based on something the patient told you, right? *A.* That is correct.

"...

"*Q.* So, actually, Dr. Babb, wouldn't it be a fair statement it could not really be a certainty that the injury you have testified to was caused by the accident, but would be

more of a possibility, a mere possibility that it was caused, right? *A.* I believe that is a fair statement, yes, sir.

"*Q.* And it is also a fair statement, isn't it, that there could have been other causes throughout the course of this girl's life, right? *A.* That would have to depend on the patient's own testimony and medical history. I don't believe I could testify to that.

"*Q.* As to whether or not what she tells you is true, right? *A.* That is correct."

Dr. Babb was excused, and counsel for defendants moved to strike his testimony as to cause or permanency. The court struck the testimony as to whether the injury was caused by the accident, and instructed the jury to disregard it.

Dr. McCain, an orthopedic surgeon called by defendants, testified that there was a little irregularity in the eighth dorsal vertebra; that he saw some other irregularities and the farmwork described could cause them in a young girl as the result of strain to the growing centers. The little free fragment came about through development and not trauma. It was not a fracture, was a minimal deformity, and would not restrict her. Had there been a fracture she would have had immediate and severe pain.

After verdict, the court concluded that the award must have included an allowance for the permanent abnormality of the eighth dorsal vertebra, and that there was no evidence to support a finding that it was caused by the accident; that the award was excessive and there was evidence of error and perversity. The court determined that $4,000 would be the lowest amount an unprejudiced jury, properly instructed, would under the evidence, probably assess. A new trial as to Marion's damages was granted unless she elected within thirty days to remit the excess and take judgment for $4,000 and costs.

The court used the "lowest amount" option because of its conclusion that the verdict was affected by error and per-

versity and that therefore the rule of *Powers v. Allstate Ins. Co.*[1] would not apply.

It is plaintiff's position that it was agreed between counsel that Dr. Babb could merely be asked if the injury was caused by an accident and that it was for the jury to decide whether the accident of April 2, 1960, was the one. Plaintiff had a right to ask a proper hypothetical question in order to find out whether, on the facts assumed, Dr. Babb had an opinion whether the accident caused the injury, and what the opinion was if he had one. Defendants' counsel apparently wished to avoid the recitation of the facts before the jury, necessarily involved in a hypothetical question, and the two counsel reached some agreement, about the extent of which they differ, but under which plaintiff's counsel did not pursue the hypothetical question.

Apparently the circuit court, as well as defendants' counsel, did not agree that the stipulation went as far as plaintiff claims. The record does not show whether Dr. Babb was still available after the court struck a portion of his testimony. In any event, plaintiff's counsel did not ask leave to recall him, although he later moved for a mistrial, claiming he had been misled.

The record does not establish that the stipulation went to the extent claimed by plaintiff's counsel, although it is possible that he may have relied on his own understanding of it in forgoing the hypothetical question. Thus we cannot say that the defendants bound themselves to accept the jury verdict on the cause question.

Plaintiff's further position appears to be that in any event Dr. Babb's testimony indicates his opinion that the particular accident was sufficient to cause the injury and that it must have been caused by some accident. It would follow, accord-

---

[1] (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393. See *Campbell v. Sutliff* (1927), 193 Wis. 370, 214 N. W. 374. Also see Ghiardi, Personal Injury Damages, Vol. I, No. 2, Wisconsin Continuing Legal Education, pp. 27, 40 (April, 1961).

ing to plaintiff, that if the jury believed Marion's testimony that she had suffered no other accident the jury could properly find that this accident caused the injury.[2] Even this does not clearly appear. Dr. Babb said the injury to the vertebra was caused by an accident; that he would reasonably assume that it must have been the result of the particular accident upon the basis of Marion's statements that she had absolutely no backache before the accident in question. He added, however, "but this is an assumption." When he answered that it was a mere possibility that the accident caused the injury, he had not been asked to assume any facts as to the type of accident nor as to Marion's not having experienced previous injuries or symptoms.

We must agree with the circuit court that there was no evidence to support a finding that the accident caused the injury and the damage award could not be sustained.

We can see no proper way to resolve the difficulty other than the new trial already ordered. But we deem it fair, under the circumstances, that defendants bear some of the responsibility for the insufficiency of the record. We perceive no reason why plaintiff should not have been permitted to put a hypothetical question to Dr. Babb, and if she had asked a proper one, the record presumably would have shown whether Dr. Babb had an opinion on the subject, and what the opinion was. If plaintiff chooses to have a new trial, the ultimate judgment should award her costs with respect to both trials; neither party will tax costs on this appeal. The time within which plaintiff may exercise her option is extended to thirty days after filing of remittitur in the circuit court.

*By the Court.*—Order modified in accordance with the opinion. No costs to be taxed in this court.

---

[2] See Anno. 135 A. L. R. 516, 532; cf. *Molinaro v. Industrial Comm.* (1956), 273 Wis. 129, 132–134, 76 N. W. (2d) 547, and *Soper v. Industrial Comm.* (1958), 5 Wis. (2d) 570, 572–575, 93 N. W. (2d) 329.